Commonwealth ex rel. Tate *v.* Burke, Warden.

Argued January 16, 1950. Before MAXEY, C. J., DREW, LINN, STERN, STEARNE and JONES, JJ.

reargument refused March 20, 950.

*Herbert L. Maris,* for relator.

*Ralph B. Umsted,* Deputy Attorney General, with him *T. McKeen Chidsey,* Attorney General, for Pennsylvania Board of Parole, intervening defendant.

OPINION BY MR. JUSTICE JONES, February 7, 1950:

This proceeding was initiated by the relator's original petition for a writ of habeas corpus whereon a rule was granted requiring the warden of the Eastern State Penitentiary and the district attorney of Dauphin County to show cause why the writ should not issue. On petition, the Pennsylvania Board of Parole was permitted to intervene as a party respondent (see Act of May 28, 1915, P. L. 616, 12 PS §145) and, thereafter, filed an answer on the merits.[1] The matter is now before us on the relator's petition and the Board's answer and has been fully argued by respective counsel both orally and by printed brief.

The question involved is whether the Parole Board has statutory authority to compute the remainder of the period equal to a parolee's maximum term, following his recommitment for a breach of his parole by violating a rule of the Board, from the date of his violation or from the date of his arrest for such breach of parole.

As a detailed recital of the various dates of parole, parole violations, re-parole and recommitments of the relator would tend to confuse rather than clarify, the material facts, none of which is in dispute, will be sum-

---

[1] Up to this point, the pleadings were filed with the Superior Court which, on January 12, 1950, entered an order refusing to issue the writ for the reason that that court "do[es] not have appellate jurisdiction of the crime [murder] of which relator was convicted." This court's jurisdiction was then invoked on the same pleadings. As is evident, the matter is not here on an appeal from the Superior Court. Neither our action in taking jurisdiction nor anything said herein should be taken as implying any opinion with respect to the view expressed by the Superior Court in the premises.

marized. After the relator had served more than the minimum of a ten to twenty year sentence in the Eastern State Penitentiary, he was paroled for the balance of nine years, ten months and twenty-seven days of the then unexpired maximum sentence. Two days after his parole, he violated a condition thereof by leaving the State without permission of the Parole Board which marked him delinquent on its records as of the date of his departure from the State. He was not apprehended, however, for some three and a half years and was then returned to the penitentiary. He was given a credit of only two days (i.e., the period of his unviolated parole) against the remainder of the maximum unexpired term at the date of his parole. Twenty-two months after his recommitment, he was re-paroled; and two years and two months thereafter, he was again marked delinquent for absenting himself from the State without the Board's permission. But his arrest and return to the penitentiary did not occur for a further period of two years and eight months. The only parole violations chargeable to the relator were breaches of Board regulations or conditions attaching to his parole and not for any crime, punishable by imprisonment, committed by him during his parole.

At the time of the relator's last recommitment for parole violation, whereby he is still confined in the penitentiary, the expiration of his maximum sentence, according to the computation of the Board, was figured to be April 25, 1953, notwithstanding that April 10, 1947, was the expiration date of his maximum sentence as originally imposed. The Board arrived at its result by computing the remainder of the period equal to the unexpired maximum term of the relator, as originally sentenced, from the date he breached his parole by leaving the State rather than from the time of his arrest for such breach. We think it is clear that, in so doing, the Board erred.

In passing, it should be noted that the power to grant paroles, recommit for parole violation, grant re-paroles, etc., in all cases where the sentence is two years or more, is now vested exclusively in the Pennsylvania Board of Parole: see Secs. 2 and 17 of the Act of August 6, 1941, P. L. 861, as amended (61 PS §§331.2 and 331.17 Pkt. Part). So that, where earlier statutes commit the administration of paroles, etc., to the Board of Pardons, the Board of Parole should be read in its stead.

The Act of June 19, 1911, P. L. 1055, as amended by the Act of June 3, 1915, P. L. 788, plainly differentiated between the penalty for a parole violation by commission of a crime and a violation which consisted of no more than a breach of rules or regulations of the Parole Board. Compare Sections 10 and 14.

Thus, Section 10 of the Act of 1911, as amended in 1915 and as last amended by the Act of June 22, 1931, P. L. 862 (61 PS §305 Pkt. Part), provides that a paroled convict who, during his parole, commits a crime punishable by imprisonment shall be required to serve for such violation ". . . the remainder of the term (without commutation) which said convict would have been compelled to serve but for the commutation authorizing said parole. . . ." By way of illustration, if a convict, having served the minimum term of his prison sentence, is paroled and some years later, but still within the period of parole, commits a crime punishable by imprisonment, he will be compelled, upon his return to the penitentiary, to serve the entire portion of his maximum sentence which was unexpired at the time of his parole. In other words, he receives no credit on his maximum sentence for the years he was not a violator by crime while out on parole: *Commonwealth ex rel. Meinzer v. Smith*, 118 Pa. Superior Ct. 250, 180 A. 179; and *Commonwealth ex rel. Palmieri v. Ashe*, 139 Pa. Superior Ct. 425, 12 A. 2d 505.

On the other hand, Section 14 of the Act of 1911, as amended by the Act of 1915 and as now supplied by the Act of May 1, 1929, P. L. 1182 (61 PS §§309, 310), provides that whenever a parolee violates the *terms* of his parole (to be distinguished from a violation by crime covered by Section 10), the Board of Pardons (i.e., Parole) shall cause a warrant to be issued for his arrest and "Upon said convict being returned to the penitentiary, he or she shall be given an opportunity to appear before its board of trustees, and, if said board, after considering the report of the Board of Pardons [i.e., Parole], shall find that said parole has not been broken, it shall notify the Board of Pardons [i.e., Parole], . . . But if it be found that said parole has been broken, said board shall declare such convict delinquent, after which a full report of the said case shall be forwarded immediately to the Governor, who thereupon may issue his mandate, reciting the date of commutation, for the recommitment of such convict, for breach of parole, to the penitentiary of original commitment, to be imprisoned in said penitentiary for *the remainder* of a period equal to the unexpired maximum term of such prisoner, as originally sentenced *computing the same from the date of arrest for breach of parole* . . ." (Emphasis supplied).

It is plain enough that a parole violator within the purview of Section 14 of the Act of 1911, as amended, must be arrested and given an opportunity to appear before the board of trustees of the penitentiary, to which he is returned, before the Board of Parole can declare such convict delinquent. It is obvious, therefore, that the official date of declared delinquency cannot in the circumstances precede the violator's arrest. This is further confirmed by the change made by the Act of 1911, supra, in the Act of May 10, 1909, P. L. 495. Under Section 14 of the Act of 1909, the board of inspectors

of a penitentiary was authorized to declare a parole violator delinquent before his arrest and return. The Act of 1911 was substantially a section-by-section re-enactment of the Act of 1909 and contained only a general repeal clause. But, one of the most, if not actually the most, notable inconsistency between the two Acts was the exclusion by Section 14 of the Act of 1911 of the provision in Section 14 of the Act of 1909 permitting a declaration of a parole violator's delinquency before he had been apprehended and returned to the penitentiary. Furthermore, Section 14 of the Act of 1911, as amended by the Act of 1915, specifically provides that the remainder of the period equal to the unexpired maximum term of a parole violator shall be computed "from the date of arrest for breach of parole."

It was the manifest intent of the legislature in Section 14 of the Act of 1911, as amended by the Act of 1915, to give a parolee credit against the unexpired maximum term of his sentence for the time he was out of prison as the result of a parole and *did not commit a crime punishable by imprisonment.* See *Commonwealth ex rel. Crimmins v. Smith,* 118 Pa. Superior Ct. 255, 180 A. 181, where Section 14 of the Act of 1911, as amended, was the subject of construction. In that case Judge Baldrige, who also wrote the opinion in *Commonwealth ex rel. Meinzer v. Smith,* supra (handed down the same day), cogently reasoned, pp. 257-258, that,—"There is a marked, and we think a very significant, difference between this language and that used in section 10 which was applicable in the Meinzer case. In section 10 we find the emphatic expression that the violator shall serve the 'remainder of the term (without commutation),' etc. The Legislature of 1915 undoubtedly had a very definite purpose in mind in amending section 14, and used language that clearly imports a different meaning from section 10. . . . we think the pur-

pose of passing the amending Act of 1915, with its added provision that the unexpired maximum term shall be computed from the 'date of arrest for breach of parole,' is apparent. It seems to be quite evident that the Legislature felt that the inflicting of a penalty, compelling a violator of rules to serve his unexpired maximum term from the date he was originally paroled, was too harsh and stringent; that a parolee who has violated a rule ought to be considered in a different category from one who has committed another criminal offense. Otherwise, an amendment to section 14 would have been unnecessary. Furthermore, if a violator of rules is subject to serve the remainder of the unexpired term at the time of his release, the same language as in section 10 probably would have been used."

The Parole Board concedes that a parolee who merely violates a rule of the Board is not required to serve the whole of his unexpired maximum sentence remaining at the date of his parole but contends that all such a violator is entitled to receive as a credit on his maximum sentence is the period spent on parole prior to his breach thereof regardless of the date of his arrest therefor. Such a construction flies directly in the teeth of the statute. Nor is there any merit in the argument that, a parole being a matter of privilege (cf. *Commonwealth ex rel. Banks v. Cain*, 345 Pa. 581, 28 A. 2d 897), the Board may attach, even after the fact, any condition it sees fit. The grace extended by parole is the grace of the law and not of the Board; and only by faithful pursuance of the legislature's directions can the Board act competently.

It follows that, by computing the remainder of the period equal to the relator's unexpired maximum term from the date of his breach of parole rather than from the date of his arrest for such breach, the Board violated the clear intendment of the statute. All that he

could have rightly been compelled to serve for his parole violation was the time remaining from the date of his arrest therefor until the expiration of his maximum sentence as originally imposed. As his last arrest for parole violation was admittedly made subsequent to the expiration of his maximum sentence as originally imposed, his ensuing recommitment was without warrant of law. His continued restraint is, therefore, unlawful.

Writ granted and relator discharged.