Commonwealth ex rel. Harman, Appellant, *v.* Burke.

548

Submitted March 10, 1952. Before RHODES, P. J., HIRT, RENO, DITHRICH, ROSS, ARNOLD and GUNTHER, JJ.

*Michael R. Harman,* appellant, in propria persona, submitted a brief.

*Clarence M. Lawyer, Jr.,* District Attorney, *Robert M. Mountenay* and *Randolph C. Ryder,* Deputy Attorneys General, and *Robert E. Woodside,* Attorney General, for appellee, submitted a brief.

OPINION BY RHODES, P. J., October 1, 1952:

This is an appeal from an order denying relator's petition for a writ of habeas corpus.

Relator was originally sentenced at No. 11, October Sessions, 1936, in the Court of Quarter Sessions of York County to a term of not less than two years nor more than four years in the Eastern State Penitentiary upon his conviction of an attempt to commit burglary. The effective date of the sentence was September 14, 1936.

Relator was released on parole on September 28, 1938, at which time there remained unserved of his maximum sentence one year, eleven months and sixteen days. On December 3, 1938, he was arrested in York County for drunkenness, after which he was re-

committed by the Board of Parole as a parole violator. After serving twenty days on this recommitment, he was released on December 27, 1938.

On February 8, 1939, he was again arrested in York County and thereafter charged with burglary and related crimes at No. 13, April Sessions, 1939, and with arson at No. 14, April Sessions, 1939. He entered guilty pleas to both indictments, and was sentenced to serve a term of not less than five years nor more than ten years in the Eastern State Penitentiary on each bill. The court, in imposing these sentences, provided that they were "to run concurrently and to begin at the time of his first incarceration and be in addition to his liability under the law for the breaking of his parole."

Upon his recommitment to the penitentiary, on April 26, 1939, he was credited with the period of confinement in the York County Prison from the date of his arrest, February 8, 1939, to the date of his recommitment to the penitentiary, April 26, 1939. As of February 8, 1939, there remained unserved, as computed by the authorities, of his original maximum sentence one year, eleven months, and sixteen days. For the twenty days relator served in December, 1938, upon his recommitment as a technical parole violator, no credit was given.

On January 24, 1941, relator was reentered on the prison records as beginning to serve the concurrent sentences imposed at Nos. 13 and 14, April Sessions, 1939. Five years thereafter, on January 24, 1946, relator was again paroled. Although the prison records indicate that at such time there remained five years of relator's maximum sentence to be served, both the District Attorney of York County and the Pennsylvania Board of Parole concede that he should be credited with the twenty days served after a technical parole

violation. Accordingly there then remained unserved four years, eleven months and ten days of his maximum term.

On February 12, 1946, relator violated his parole by leaving the Commonwealth of Pennsylvania and going to Maryland without the permission of the parole authorities. On June 12, 1946, he was arrested in Baltimore, Maryland, on suspicion of burglary. A detainer was lodged against him with the Maryland authorities by the Pennsylvania Board of Parole. On July 8, 1946, he was convicted of burglary in Baltimore and sentenced to serve four years in the Maryland House of Correction. Upon completion of his Maryland sentence on May 29, 1949, he was returned to Pennsylvania as a convicted parole violator and recommitted to the Eastern State Penitentiary. The unserved remainder of his maximum sentences at Nos. 13 and 14, April Sessions, 1939, allowing credit for the twenty days served in December, 1939, will expire May 9, 1954.

In his petition and brief, relator alleges many errors and irregularities in the procedure resulting in his confinement. We find no merit in any of his contentions.

Relator first contends that he should have been allowed credit against the maximum term of his original sentence (No. 11, October Sessions, 1936) for the seventy days intervening between the time of his release on parole, September 28, 1938, and the time of his recommitment as a technical parole violator, December 7, 1938. He cites in support of this contention *Com. ex rel. Crimmins v. Smith,* 118 Pa. Superior Ct. 255, 180 A. 181, as well as *Com. ex rel. Tate v. Burke,* 364 Pa. 179, 71 A. 2d 241. These cases are authority to the effect that under section 14 of the Act of June 19, 1911, P. L. 1055, as amended by the Act of June 3,

1915, P. L. 788, and as supplied by the Act of May 1, 1929, P. L. 1182, 61 PS §§309, 310, where a parolee is recommitted for a breach of his parole consisting of a violation of a rule of the Pennsylvania Board of Parole, the remainder of the period equal to the parolee's maximum term which he must serve is to be computed from the date of his arrest for such breach of parole, thus giving credit against the unexpired maximum term of his sentence for the time he was out of prison as the result of a parole and not having committed a crime punishable by imprisonment. See, also, *Com. ex rel. Carmelo v. Burke,* 168 Pa. Superior Ct. 109, 117, 78 A. 2d 20. Had relator's delinquencies ceased as of that time he would have been entitled to credit for the time while on parole. But relator was again released on parole, and thereafter committed two crimes punishable by imprisonment for which he was convicted. By reason thereof the provisions of section 10 of the Act of June 19, 1911, P. L. 1055, as amended by the Act of June 22, 1931, P. L. 862, §1, 61 PS §305, became applicable to him. Under this section of the applicable Act, where the parole of a prisoner sentenced to the penitentiary is revoked and terminated upon conviction of another crime committed during his parole, the prisoner shall be imprisoned for the remainder of the term or original sentence not served when the parole was granted, and no credit may be allowed for the time he was out on parole. See *Com. ex rel. Carmelo v. Burke,* supra, 168 Pa. Superior Ct. 109, 112, 78 A. 2d 20. The fact that at one time relator might have been entitled to credit for time spent on parole does not preclude the forfeiture of such right by his subsequent conviction of a crime committed during parole after having been again released thereon.

Relator further contends that service of the remainder of the original term (No. 11, October Sessions,

1936) was concurrent with service of the sentences imposed at Nos. 13 and 14, April Sessions, 1939, beginning as of February 8, 1939, the date of his arrest on the latter charges. He bases this contention in part upon the statement of the sentencing judge upon imposition of the latter sentences to the effect that they were "to run concurrently and to begin at the time of his first incarceration and be in addition to his liability under the law for the breaking of his parole." Because of such language, he argues, the effective date of the latter two sentences then imposed was established as "the time of his first incarceration," which was February 8, 1939.

This contention is not novel; and it has no merit. In *Com. ex rel. Lerner v. Smith,* 151 Pa. Superior Ct. 265, 30 A. 2d 347, a similar argument was advanced. In the *Lerner* case, the relator, while on parole, committed another crime for which he was convicted and sentenced to the penitentiary, from which he had been released on parole, for a period of not less than two and one-half years nor more than five years, to be computed from January 24, 1939, the date of his commitment prior to the second conviction. He contended that the service of the unexpired term of the original sentence ran concurrently with service of the later sentence imposed for the crime committed while on parole. The Act of May 28, 1937, P. L. 1036, 19 PS §894, provides that "all sentences for criminal offenses of persons who at the time sentence is imposed are held in custody in default of bail, or otherwise, shall begin to run and be computed from the date of commitment for the offense for which said sentence shall be imposed, unless the person sentenced shall then be undergoing imprisonment under a sentence imposed for any other offense or offenses, in which case the said sentence shall begin to run and be computed, either from the

date of imposition thereof or from the expiration of such other sentence or sentences, as the court shall, in its discretion, direct." Relator claimed that the Act of 1937 repealed or modified section 10 of the Act of June 19, 1911, P. L. 1055, as amended, thereby permitting the sentences to run concurrently, despite the mandatory provisions of section 10 to the contrary. We rejected this contention and held that the Act of 1937 did not repeal or modify section 10 of the Act of 1911, as amended, and that the Act of 1937 had nothing to do with parole. The *Lerner* case decided that, where a convict is legally sentenced for a crime committed during his parole to the penitentiary from which he has been released on parole, the unexpired portion of his original sentence must be served before he commences to serve the sentence imposed for the crime committed while on parole. In other words, section 10 of the Act of 1911, as amended, 61 PS §305, means what it plainly says, and the two sentences cannot run concurrently. See *Miller v. Erie County Court of Common Pleas,* 356 Pa. 396, 52 A. 2d 223.

As the court below points out in its opinion, under such circumstances as confronted the sentencing judge in this case, the effective date of sentence is supplied merely to compensate for the time spent in jail between the arrest and sentence in conformity with section 1 of the Act of May 28, 1937, P. L. 1036, 19 PS §894. We think that to such end was directed the use of the phrase "to begin at the time of his first incarceration." Certainly the use of the further language "and be in addition to his liability under the law for the breaking of his parole" refutes any inference that the judge intended the sentences to be concurrent. Irrespective of the intent of the sentencing judge, however, the manner and order of service, having been provided by law, cannot be changed by the court. *Toliver v. State Board*

*of Parole,* 157 Pa. Superior Ct. 218, 42 A. 2d 285; *Com. ex rel. McDevitt v. Burke,* 166 Pa. Superior Ct. 194, 197, 198, 70 A. 2d 663; *Com. ex rel. Little v. Keenan,* 168 Pa. Superior Ct. 125, 128, 78 A. 2d 27; *Com. ex rel. Westwood v. Gackenbach,* 169 Pa. Superior Ct. 637, 84 A. 2d 380.

Relator's argument to the effect that, for a parolee to be constituted a parole violator under section 10 of the Act of 1911, as amended, 61 PS §305, he must have been convicted of a crime committed in Pennsylvania, scarcely warrants comment. While the Act of 1911 referred to a conviction of "any crime punishable by imprisonment under the laws of this Commonwealth," the Act of June 22, 1931, P. L. 862, §1, in amending the Act of 1911, deleted the phrase "under the laws of this Commonwealth." Relator's conviction of the commission of a crime punishable by imprisonment, irrespective of the jurisdiction in which the crime was committed, rendered him subject to the provisions of section 10 of the Act.[1] *Com. ex rel. McAuliffe v. Burke,* 158 Pa. Superior Ct. 610, 45 A. 2d 870.

Also without merit is relator's contention that upon leaving the Commonwealth of Pennsylvania without permission he irrevocably became a technical parole violator and could not thereafter be held a parole violator by reason of his conviction of a subsequent crime. We agree with the following statement of the lower court in answer to this argument: "This contention is nothing short of ridiculous; any parolee could avoid the penalties of a criminal parole violation merely by becoming technically delinquent just prior to committing the contemplated crime. The legislature intended no such result." Section 10 of the Act of 1911,

---

[1] See Act of August 24, 1951, P. L. 1401, §5, 61 PS §331.21a.

as amended, 61 PS §305, refers to a crime committed by a convict "during the period of his or her parole, or while delinquent on said parole, . . ." And the fact that the Pennsylvania Board of Parole lodged a detainer against relator with the Maryland authorities subsequent to his arrest but before his conviction in no manner prevented the provisions of section 10 from becoming operative upon his ensuing conviction.

Sufficient answer to relator's claim that he was illegally returned to Pennsylvania from Maryland by parole officers of this Commonwealth is supplied by our recent decision in *Com. ex rel. Rushkowski v. Burke,* 171 Pa. Superior Ct. 1, 89 A. 2d 899, wherein we held that, where a person has been convicted of a crime and thereafter violates the provisions of a parole granted to him, he may not escape the consequences of conviction by reason of the manner of his return to this jurisdiction for the purpose of satisfying the judgment.

In *Com. ex rel. Banks v. Cain,* 345 Pa. 581, 28 A. 2d 897, the Supreme Court upheld generally the constitutionality of the Act of August 6, 1941, P. L. 861, 61 PS §331.1 et seq., and in *Com. ex rel. Carmelo v. Burke,* supra, 168 Pa. Superior Ct. 109, 78 A. 2d 20, this Court found nothing constitutionally objectionable in section 10 of the Act of 1911, as amended, 61 PS §305. We find no merit in relator's further attack upon the constitutionality of these statutes.

Authorities of the Eastern State Penitentiary and the Pennsylvania Board of Parole will correct their records so as to allow credit to relator for the period of twenty days' imprisonment served from December 8, 1938, to December 27, 1938.

The order of the court is otherwise affirmed.