## Commonwealth ex rel. Neiswender v. Dressell, Warden

*J. T. Riley*, for relator.

*M. J. Morgan*, district attorney, for defendant.

HENNINGER, P. J., April 26, 1954.—Earl Neiswender was sentenced to terms of imprisonment in the

Lehigh County Prison with a maximum of four years to date from December 31, 1949.

On December 20, 1951, he was placed on parole by the Pennsylvania State Board of Parole upon condition that he reside in the City of Allentown, work for the Allentown Hospital and report regularly to the parole officer assigned to his case.

On December 27, 1951, without the knowledge or consent of the Parole Board, relator left his employment and his residence here and removed to Florida and from there to Washington, D. C., where he was picked up on April 25, 1953, as a parole violator and returned to the Lehigh County Prison where he has remained since.

On March 8, 1954, relator brought this writ of habeas corpus contending that his maximum term had expired on December 31, 1953, to which the Parole Board caused an answer to be filed that under section 5 of the Act of August 24, 1951, P. L. 1401, 61 PS §331.21a, relator was not entitled to credit against his sentence for the time he was delinquent on parole.

According to the law in force at the time relator was sentenced, failure to comply with the terms of parole was a mere technical violation and under section 21 of the Parole Act of August 6, 1941, P. L. 861, 61 PS §331.21, and Commonwealth ex rel. Tate v. Burke, 364 Pa. 179, relator would have been entitled to credit against his maximum sentence for the time spent on parole, although he had defied the Parole Board for all but a week of the time.

Between the time of his sentence and his release on parole, however, the State Legislature, moved by the decision in Com. ex rel. Tate v. Burke, supra, passed the Act of August 24, 1951, P. L. 1401, above cited, the pertinent portions of which read as follows:

"Technical violators. Any parolee under the jurisdiction of the Pennsylvania Board of Parole released

from any penal institution in the Commonwealth who, during the period of parole, violates the terms and conditions of his parole, other than by the commission of a new crime of which he is convicted or found guilty by a judge or jury or to which he pleads guilty or nolo contendere in a court of record, may be recommitted after hearing before the board to the institution from which he was paroled or to any other institution to which legally transferred as a parole violator. If he is so recommitted, he shall be given credit for the time served on parole in good standing but with no credit for delinquent time, and may be reentered to serve the remainder of his original sentence or sentences. Said remainder shall be computed by the board from the time his delinquent conduct occurred for the unexpired period of the maximum sentence imposed by the court without credit for the period the parolee was delinquent on parole, and he shall be required to serve such remainder so computed from the date he is taken into custody on the warrant of the board. Such prisoner shall be subject to reparole by the board whenever in its opinion the best interests of the prisoner justify or require his being reparoled and it does not appear that the interests of the Commonwealth will be injured thereby."

Relator raises three points in his brief: (1) No hearing by the Parole Board before recommitment; (2) maximum sentence has expired, and (3) Act of 1951 is ex post facto as to relator.

The second point is most easily disposed of for it has frequently been passed upon by our appellate courts. Conceding that so long as a parolee complies with his parole requirements, parole or "street" time would count against maximum sentence time (Com. ex rel. Crimmins v. Smith, 118 Pa. Superior Ct. 255, 258), it has always been within the power of the legislature to determine whether that should be so: Com-

monwealth ex rel. Meinzer v. Smith, 118 Pa. Superior Ct. 250, 254; Commonwealth ex rel. Palmieri v. Ashe, 139 Pa. Superior Ct. 425, 427.

There have been some loose statements that parole is imprisonment at large and so forth (Anderson v. Corall, 263 U. S. 193, 196; Commonwealth ex rel. Banks v. Cain, 345 Pa. 581, 588), but the controlling theory of parole is that it is an act of executive grace or mercy granted on its own terms and without the right of the prisoner to demand it on any other terms than those imposed by the agency in whom the State has reposed the authority to administer parole, within the terms of the authority so reposed: Com. ex rel. Williamson v. Burke, 172 Pa. Superior Ct. 39, 42; Com. ex rel. Carmelo v. Burke, 168 Pa. Superior Ct. 109, 114.

Relator's sentence did not read that he was to be imprisoned until December 31, 1953; it read that he was to serve four years in prison. The Parole Board, within its powers, released him before the four years had been served; no one has ever contended that such a release is absolute; even relator concedes that despite his release he could be held until four years after the date of his sentence.

The legislature has prescribed the terms upon which such released time shall or shall not be counted as a substitute for time served. The courts have recognized the validity of the legislative fiat that in case of commission of a crime while on parole, released time should not count against the total term of imprisonment imposed: Com. ex rel. Carmelo v. Burke, supra, p. 112; Com. ex rel. Meinzer v. Smith, supra, p. 254. That this has caused prisoners to serve beyond the time elapsed between the effective date of the sentence and the maximum imposed has caused the courts little concern. See cases above cited.

The Tate case holds simply that the legislature had not prescribed that defiance of parole authorities deprived the parolee of street time against sentence imposed; the case does not hold that the legislature could not constitutionally so prescribe and therefore there is nothing in the Tate case inconsistent with validity of the provisions of the Act of 1951, supra.

Relator next contends, however, that since the Act of 1951 was passed after sentence was imposed, it is an ex post facto law so far as relator is concerned.

As outlined in Com. v. Kalck, 239 Pa. 533, 538, there are four tests of a law to determine whether or not it is ex post facto:

"As far back as 1798, the Supreme Court of the United States in Calder v. Bull, 3 Dall. 386, undertook to define the meaning of an ex post facto law, and that case has remained as a leading authority on the question to the present time. Under that decision ex post facto laws were grouped into four classes, as follows: (1) Every law that makes an act done before the passing of the law, and which was innocent when done, criminal; (2) every law that aggravates a crime, or makes it greater than it was when committed; (3) every law that changes the punishment, and inflicts a greater punishment than the law annexed to the crime, when committed; (4) every law that alters the legal rules of evidence, and requires less or different testimony, than the law required at the time of the commission of the offense, in order to convict."

Only one of these could conceivably apply to this case, that is the change of punishment inflicting a greater punishment than the law annexed to the crime, when committed. Remembering that relator's sentence states that relator shall not serve *imprisonment* for more than four years, that it does not state that he shall be released on December 31, 1953, that release on parole is a matter of executive clemency and not one

of right and that relator has not yet served more than four years of *imprisonment*, relator cannot be heard to say that his sentence of imprisonment has been extended.

We need not speculate as to the effect of the 1951 Act had relator been paroled prior thereto. At the time of its passage he was still in prison and no power save the Parole Board or the Board of Pardons could have procured his release prior to the expiration of his term. The Act of 1951 did not seek to lessen the powers of the Board of Pardons, so relator lost no rights of commutation which he possessed at the time of commitment of the crime. He had no right of parole, so he lost nothing there either.

If relator lost anything by the Act of 1951, it was not a right that he lost; all he lost was the opportunity under existing laws to defy the Parole Board with impunity so long as he could keep beyond its reach. The opportunity to defy a penal administrative agency is not a right, even under Commonwealth ex rel. Tate v. Burke, supra. It was heretofore merely an irremediable wrong. If it be argued that the Act of 1951 must necessarily have imposed a more severe punishment than existed when relator was sentenced, it must be remembered that the Act of 1951 with its seemingly harsher terms has probably brought about the parole of many men in whom the Parole Board had little confidence and who, in the light of the Tate case, would probably have been compelled to serve out their maximum sentences in prison. With the Act of 1951 eliminating the advantages of absconding, the Parole Board could release poorer risks than they might have released under the Tate case, and relator was himself one of these poorer risks.

While the point that changing methods of parole after sentence is not ex post facto legislation was not raised, it was certainly implied in Commonwealth

ex rel. Banks v. Cain, supra. In that case relator was sentenced in 1940 to a sentence of one to two years to begin June 1941. In June 1942 the court which sentenced him ordered him released upon payment of his fine and costs. When he was sentenced the court had the authority to parole him at any time and clearly intended to parole at the expiration of the minimum sentence, if for no other reason, as a lever to collect the fine and costs. Meanwhile, in 1941, the Parole Board Act had been enacted and the Supreme Court held that courts had no vested rights over execution of the sentences they imposed. Clearly in that case legislation, enacted after the relator's sentence, affected his chances of release and yet it was not held to affect the validity of the law.

The very point was passed upon in Commonwealth v. Kalck, supra, (p. 542) in which it was stated that statutes which relate to procedure or penal administration, or prison discipline are not to be considered ex post facto, though the effect may be to enhance the severity of the punishment.

Whether or not relator has had a *hearing* we cannot say, nor whether he has demanded one. Suffice it to say that it is admitted that he absconded while on parole and therefore under the Act of 1951 is not entitled to credit against his sentence of *imprisonment* for the time spent as an absconder and that he has not yet *served* four years of the sentence we imposed. He is not, therefore, entitled to release as a matter of law at this time.

If relator is entitled to a hearing that he has not been given, the remedy is not in habeas corpus and probably not with this court.

Now, April 26, 1954, it is found that relator, Earl F. Neiswender, is properly under confinement in the Lehigh County Prison and the writ of habeas corpus heretofore granted is now dismissed at relator's costs.