[Crim. No. 1792. Third Dist. Mar. 11, 1942.]

In re GEORGE KORNER, on Habeas Corpus.

George Korner, in pro. per., and Mervin H. Reith for Petitioner.

Earl Warren, Attorney General, and J. Q. Brown, Deputy Attorney General, for Respondent.

DEIRUP, J. pro tem.—A writ of habeas corpus was issued by this court after a similar writ had been discharged by the Superior Court in and for Sacramento County. It appears from the record that the petitioner, George Korner, was convicted of first degree robbery in Santa Clara County and was sentenced to serve a term of not less than five years (Pen. Code, sec. 213); that he was received in the State Prison at San Quentin on May 11, 1936, and transferred to the State Prison at Folsom on February 25, 1937, and has been confined at that place ever since. The Board of Prison Terms and Paroles fixed his sentence at 50 years on November 30, 1938, and at the same time granted him a parole to become effective when he had served four years with the condition that he be released to the United States Immigration authorities for deportation to Germany. He did not take advantage of the parole. On October 3, 1940, the board issued an order in which it determined that the original sentence was excessive and refixed his term at eight years, with the last year

on parole with the condition that he be deported or, in the event of a dismissal of the detainer by the immigration authorities, that he be released to employment in the State of California satisfactory to the State Parole Officer. On June 3, 1941, the board rescinded the action which it had taken on October 3, 1940, and put into effect the original order of November 30, 1938, in which the term was fixed at 50 years. This was done after information had been received from the immigration authorities to the effect that the petitioner had refused to sign an application for a Soviet *transit visa* to Germany, thereby making it impossible to deport him. If the order of October 3, 1940, had not been rescinded the petitioner would have been entitled to a release from prison on June 11, 1941, for at that time his term of eight years, reduced by normal credits and also by additional credits which had been allowed him for extra meritorious services, would have expired. It is the contention of the petitioner that the order by which the board reduced the term from 50 to eight years was valid but that the subsequent order in which it restored the original term was beyond its jurisdiction.

The following are the statutory provisions in the Penal Code (sec. 1168) which were in force at the time when the sentence was fixed at 50 years:

"(1) Imprisonment. Every person convicted of a public offense, for which imprisonment in any reformatory or State prison is now prescribed by law shall, unless such convicted person be placed on probation, a new trial granted, or the imposing of sentence suspended, be sentenced to be imprisoned in a State prison, but the court in imposing the sentence shall not fix the term or duration of the period of imprisonment.

"It is hereby made the duty of the warden of any of the State prisons to receive such person, who shall be imprisoned until duly released as provided for in this section. The term of imprisonment shall not exceed the maximum or be less than the minimum term of imprisonment provided by law for the public offense of which such person was convicted.

"The Board of Prison Terms and Paroles, or any board or commission that may be hereafter given authority so to do, may determine *and redetermine* after the expiration of the minimum term of imprisonment provided by law, except that in cases in which the minimum term of imprisonment is more than six months, the Board of Prison Terms and Paroles may

determine after the expiration of six months from and after the actual commencement of such imprisonment, what length of time, if any, such person shall be imprisoned, unless the sentence be sooner terminated by commutation or pardon by the Governor of the State.

"When a prisoner has imposed upon him two or more cumulative or consecutive sentences, the Board of Prison Terms and Paroles may determine after the expiration of six months of his first sentence, what length of time he shall serve on all such cumulative consecutive sentences.

"In case any convicted person undergoing sentence in any of the State prisons commits any infraction of the rules and regulations of the prison board, or escapes while working outside such prison under the surveillance of prison guards, or violates his parole, the Board of Prison Terms and Paroles may revoke any order theretofore made determining the length of time such convicted person shall be imprisoned, and make a new order determining such length of time not exceeding the maximum penalty provided by law for the offense for which he was convicted, unless the sentence be sooner terminated by commutation or pardon by the Governor of the State. *Such revocation and redetermination shall not be had except upon a hearing upon the question of such infraction or escape or violation and an adjudication by the board that such prisoner was guilty thereof, which adjudication shall be final. At such hearing such prisoner, unless outside the walls of the prison as an escape and fugitive from justice, shall be present and entitled to be heard and may present evidence and witnesses in his behalf.*"

In quoting these provisions we have placed emphasis upon the portions of the section which are most pertinent to the legal question involved in this proceeding.

Section 1168 of the Penal Code, also known as the indeterminate sentence law, enacted in 1917 (Stats. 1917, p. 665) contained no express provision in reference to the change of a sentence once fixed until 1929. In that year by amendment it was provided that:

"The term of imprisonment so fixed by the state board of prison directors, shall not thereafter be increased or diminished by said board for any reason whatsoever except as in this section provided." (Stats. 1929, p. 1930.)

This new provision was eliminated in 1931 and the one which enabled the board to increase the term, after a hearing, in the event of an infraction of the rules or an escape was

inserted. (Stats. 1931, p. 1053.) In 1935 the power to redetermine the length of time of imprisonment was given to the board. (Stats. 1935, p. 1700.) Aside from the substitution in 1937 of the Board of Prison Terms and Paroles for the State Board of Prison Directors, no further changes in the law relative to the fixing of terms were made until the act was revised in 1941 (Stats. 1941, p. 1080) and the provision for a change in the term in the event of an infraction of the rules or an escape was eliminated. The board now has power to determine and redetermine the length of time of imprisonment, within the minimum and maximum terms prescribed by law, in any case, without granting a hearing to the prisoner. (Pen. Code, sec. 3020.) This amendment, however, took effect after petitioner's term was lengthened and, of course, was not retroactive.

It is to be borne in mind that what was done by the Board of Prison Terms and Paroles was not judicial in its nature. The judicial proceedings were terminated by the pronouncement of judgment by the trial court. That court, in legal effect, sentenced the petitioner to imprisonment for the maximum term prescribed by the statute, which is life. (Pen. Code, secs. 213, 671; *People* v. *Gonzales,* 36 Cal. App. 782 [173 Pac. 407].) Thereupon he was turned over to an administrative board which was empowered to determine how long he should be kept in prison. (*In re Daniels,* 106 Cal. App. 43 [288 Pac. 1109]; *In re Lee,* 177 Cal. 690 [171 Pac. 958]; *People* v. *McNabb,* 3 Cal. (2d) 441 [45 Pac. (2d) 334]; *People* v. *Hayes,* 9 Cal. App. (2d) 157 [49 Pac. (2d) 288].) The powers of the board are defined by statute, and, as we have shown, the legislature has, from time to time, either placed limits upon the exercise of its discretion or given it more freedom of action. Thus it removed all doubt about the right of the board to redetermine a sentence by providing that it could not do so; then enabled it to do so in the event of a violation of rules or an escape; then gave it express power to redetermine as well as determine the term of imprisonment.

Petitioner contends that the power to redetermine a sentence as given by the amendment of 1935 is limited, in so far as any increase in the term is concerned, by the provision added in 1931 to the effect that the term could be lengthened, after a hearing, in the event of an infraction of the rules or an escape; that otherwise it would be within the power of

the board to penalize a prisoner who had broken the rules without permitting him to defend himself. It is clear to us, however, that the Legislature intended only to empower the board to redetermine a sentence by the same process as had governed its action in the first place, taking into account such further facts as had come to its attention which would satisfy it that the first order it had made was improper. There is much to be said in favor of allowing the board to correct its errors. Obviously, where there was a charge that the prisoner had violated rules, the board would grant a hearing if required by statute to do so.

Petitioner calls attention to the discussion in the opinion *In re Lee, supra,* to the effect that the indeterminate sentence law was enacted in view of the modern penological thesis that the punishment should be made to fit the criminal rather than the crime, and that the purpose of the law was to aid in the rehabilitation of the prisoner by giving him an inducement to cooperate in order to secure an early release. Starting from this premise, he argues that to permit the board to increase the term would allow it to defeat the purpose of the statute. But the discussion in *In re Lee* must not be taken as being by way of a limitation upon the power of the Legislature to authorize the board to determine and redetermine the time of imprisonment. It merely indicated the most compelling reason for the enactment of such a law. But in the last analysis, the interests of society must predominate. Ordinarily those interests are conserved best by rehabilitating a criminal so that he can fit into our social system when he is released, and the promise of a short sentence as a reward for good behavior helps toward rehabilitation. But the Legislature has left the whole problem to the Board of Prison Terms and Paroles, and we cannot say that the board has not exercised its discretion fairly. It is apparent from the record that it took into account the nature of the crime, the reports that were given it by the judge of the trial court and the district attorney and other information that came to its attention, including the admitted fact that the petitioner was a citizen of a country with which this nation was in a state of undeclared war. We cannot evaluate all of the factors in relation to each other in this proceeding because they are not before us. We must therefore hold that the action of the Board of Prison Terms and Paroles was legal and proper.

It is ordered that the writ be, and it is, discharged.

Thompson, Acting P. J., and Tuttle, J., concurred.