[Crim. No. 4665. In Bank. Mar. 19, 1946.]

In re ROBERT A. ETIE, on Habeas Corpus.

Alexander L. Oster for Petitioner.

Robert W. Kenny, Attorney General, and Frank Richards, Deputy Attorney General, for Respondent.

SHENK, J.—The petitioner seeks his release from the State Prison at Folsom by this proceeding in habeas corpus. The writ was issued. The petition and the return show the following:

On June 9, 1938, in Los Angeles County, the petitioner pleaded guilty to a charge of violation of section 476a of the Penal Code (issuance of checks without sufficient funds with intent to defraud) and admitted a prior conviction of a felony (forgery). He was committed to the State Prison at San Quentin. Subsequently the Board of Prison Terms and Paroles fixed his term of imprisonment at six years which, unless redetermined, would expire on June 9, 1944. The maximum term would be fourteen years.

On June 24, 1940, the petitioner was released on parole. On May 18, 1942, charges of violation of parole conditions were filed against him and a hearing was had at which he was present. He admitted the charges, and on May 27, 1942, the Board of Prison Terms and Paroles revoked his parole with a recommendation to the State Board of Prison Directors that all credits earned or to be earned be forfeited. On July

8, 1942, the State .Board of Prison Directors declared forfeited all statutory credits earned or to be earned by the petitioner.

On December 12, 1942, the petitioner was again released on parole. On May 15, 1944, written charges were again filed against him for the violation of the conditions of parole in that on May 4, 1944, he had been arrested and was confined in the Los Angeles county jail on a charge of grand theft. On May 23, 1944, the Adult Authority suspended his parole pending investigation of the charges, revoked the previous order fixing his term of imprisonment at six years, and redetermined his sentence until further order at the maximum term of fourteen years.

The petitioner contends that the order of May 23, 1944, was void because it was not in conformity with the provisions of section 3063 of the Penal Code which reads: "No parole shall be suspended or revoked without cause, which cause must be stated in the order suspending or revoking ·the parole." Since that order was void, he contends, the six-year term originally fixed to run from June 9, 1938, expired on June 9, 1944, and before any valid order was made revoking his parole. An order admittedly valid in form revoking his parole was made by the Adult Authority on June 18, 1945, further reference to which will presently be made.

The order of May 23, 1944, was pursuant to a written report of the chief state parole officer to the Adult Authority that the petitioner had been arrested on May 4, 1944, was in the custody of the authorities in Los Angeles County on a grand theft charge, and recommending "that the parole of Robert Etie be suspended pending final· disposition of the Grand Theft, Money Charge by the Los Angeles authorities." Upon the presentation of that report and recommendation the Adult Authority made the challenged order at its meeting at the State Prison at San Quentin on May 23, 1944. The order reads as follows:

*"PAROLES SUSPENDED*

"The Chief State Parole Officer presented separate reports in writing in each case . . . charging that the below listed prisoners had wilfully violated the terms and conditions of their paroles and Tickets of Leave, and recommending that the parole in each case be suspended, cancelled and/or revoked: . . . SQ 62096—ETIE, Robert. . . .

"Due cause being shown by the Chief State Parole Officer, it is ordered that the paroles heretofore granted the above named and numbered prisoners be cancelled, suspended and/or revoked pending investigation of the complaints filed, and it is ordered that they be retaken and returned to actual custody to abide the further disposition of this Authority.

"It is further ordered, in accordance with a resolution adopted by the Board of Prison Terms and Paroles on December 28, 1943, and re-adopted by this Authority, that the above listed prisoners who have terms set at less than Maximum shall have such actions fixing terms rescinded, and these prisoners shall be considered as serving the Maximum until further order of this Board." Under the provisions of this order the term of petitioner would expire on June 9, 1952, if the maximum be served.

The petitioner continued to be in the custody of the authorities at Los Angeles from May 4, 1944, until his return to the State Prison at Folsom. During that period the grand theft charge pending against him was brought on for trial in the Superior Court at Los Angeles. On January 16, 1945, he entered in that case a plea of guilty to the crime of criminal conspiracy to cheat and defraud by criminal means, etc., and was sentenced to serve a term of six months in the county jail. Before the expiration of that term the Adult Authority, on June 18, 1945, made an order revoking petitioner's parole and directing that he be returned forthwith to Folsom Prison as a parole violator. That order reads: "It is hereby ordered that the parole of said Robert Etie be and is hereby revoked for the following cause: 1. On January 18, 1945, subject was convicted of the crime of Criminal Conspiracy and received a six months county jail sentence therefor. 2. On or about December 23, 1944, subject violated strict orders of the Bureau of Paroles by engaging in a business enterprise. 3. On or about December 23, 1944, he continued to associate with one George Riley, a person of known bad reputation, and in violation of strict orders of the Bureau of Paroles. 4. On or about December 23, 1944, subject indulged in the use of intoxicating liquors contrary to specific instructions of this Bureau."

The foregoing order of revocation was in strict compliance with section 3063 of the Penal Code. It also appears beyond question that good cause existed for the order of suspension of May 23, 1944. That cause was the wilful vio-

lation of the terms and conditions of parole. The question then is, did that order state the cause as contemplated by section 3063? It must be noted that the order was an order of suspension pending investigation of the charge of violation in connection with the prosecution of the petitioner for the crime of grand theft and his incarceration on May 4th of the same year and of which the chief parole officer of the Adult Authority had been advised. It was in the nature of a preliminary order of suspension pending the investigation and outcome of the prosecution in Los Angeles. It is assumed that such an order should state the cause of suspension as provided in the code section, but the subject of the matter presented to the Adult Authority for action on the report of the Chief Parole Officer should be kept in mind in order to determine the particularity with which the cause for suspension should be stated and the prejudice, if any, suffered by the petitioner because of any lack of it. Here the subject matter was the charge of the Chief Parole Officer of a wilful violation of the terms and conditions of the parole. When this report was made by its Chief Parole Officer, and the prior record of violation of parole conditions by the petitioner was before it, the Adult Authority properly exercised its power and duty to take appropriate action. This it did by ordering the immediate suspension of the petitioner's parole, and his rearrest. The cause might have been stated with greater particularity, as was done in the order of revocation of June 18, 1945, but it was sufficient to show even to the casual reader that the cause of suspension pending investigation was the charge of the chief parole officer that the petitioner "had wilfully violated the terms and conditions" of his parole. This was not only good cause for suspension but was a sufficient statement of the cause in the order when considered in the light of all of the circumstances of the case, and in view of the provisions of section 1404 of the Penal Code which provides: "Neither a departure from the form or mode prescribed by this code in respect to any pleading or proceeding, nor an error or mistake therein, renders it invalid, unless it has actually prejudiced the defendant, or tended to his prejudice, in respect to a substantial right." Certainly no prejudice was suffered by the petitioner by the claimed insufficiency in the order. This court, in *In re Basuino*, 22 Cal.2d 247 [138 P.2d 297], applied section 1404 in holding that an omission or misrecital in the mandatory

form of a judgment would not invalidate it where the accompanying record supplied the omission or correction.

The petitioner relies on *In re Knaesche*, 22 Cal.App.2d 667 [72 P.2d 216], and the later case of *In re Payton*, 67 Cal.App.2d 835 [155 P.2d 837]. The Knaesche case was concerned with an order of revocation signed by the governor which admittedly contained a statement of the cause, namely, alleged invalidity of the parole because of noncompliance with provisions of section 1168(4) of the Penal Code then in force. It was held that the parole was valid and that the cause stated for its revocation did not exist; therefore, since there was in reality no cause for revocation, the order revoking the parole was invalid. In that case the failure of compliance with section 3063 concerned the failure of the existence of the cause, and not as here the failure to state the cause. That case is of no assistance to the petitioner in this proceeding. Furthermore, it is difficult to see how it could support the conclusion in the Payton case. Anything in the latter case which is contrary to our present determination is necessarily disapproved.

There is no statutory requirement that the parolee have notice or a hearing before his parole may be suspended or revoked. The authority under whose legal custody a paroled prisoner remains (Pen. Code, § 3056), has broad power to suspend or revoke a parole without notice. (Pen. Code, § 3060, *In re Soldavini*, 64 Cal.App.2d 677, 680 [149 P.2d 193].) But the petitioner contends that the order of May 23, 1944, redetermining his sentence at the maximum is void for the reason that he was not given notice and granted a hearing in accordance with the law as it existed in 1938 when he was convicted and in 1940 when his sentence was fixed at six years. He argues that the application of the law as amended in 1941 would render its operation *ex post facto*. From 1929 to 1931 the law provided that a sentence, once fixed, could not be changed. Under that law the board could determine but it could not redetermine a sentence. From 1931 to 1941 section 1168 of the Penal Code gave the Board of Prison Terms and Paroles the power to redetermine a sentence, and a redetermination on the ground of the infraction of the rules of the prison or the violation of the terms of parole could not be made except after a hearing, at which the prisoner was entitled to be present and produce evidence and witnesses in his behalf. In 1941 (Stats. 1941, p. 1080), the provision for a hearing in the event of such a redeter-

mination was eliminated, and under section 3020 of the Penal Code the board had power to redetermine the length of time of imprisonment within the minimum and maximum terms in any case without notice or hearing. The petitioner cites *In re Korner*, 50 Cal.App.2d 407 [123 P.2d 111]. That case did not involve a violation of the rules or the conditions of parole. The court rejected the contention that a redetermination was restricted to such cases. The redetermination of the term of imprisonment was upheld although it was made without reference to an infraction of the rules or the conditions of parole and without a hearing.

The petitioner also relies on language in *In re Hicks*, 28 Cal.App.2d 671, 674 [83 P.2d 73], to support his contention that the law in effect at the time the sentence was fixed by the board was controlling. In that case the petitioner was convicted before, but his sentence was fixed after the effective date of the 1931 law which gave the board power to redetermine as well as determine a sentence. It was held that inasmuch as the term was fixed after that law became effective, the board had power to increase the term. It was said: ''We may concede that if the board had been authorized to and did fix his term at seven years before the [1931] amendment of section 1168 became effective, it would have been powerless to change that order as the law then stood,'' that is, the law which prohibited a change in a sentence once fixed. But in that case, involving a violation of parole, the petitioner was unable to sustain his contention that the law in force at the time of his conviction was controlling and that the board could not change the term. The case recognized that a sentence which was fixed when the law restricted the board's authority, by expressly withholding power to redetermine a` sentence, could not be changed after the enactment of an amendment removing the restriction.

The Korner case did not involve a violation of parole. In the Hicks case both the fixing of the sentence and the violation of the parole occurred under the law in force prior to the 1941 amendment. Therefore the question presented here is not determined by either of those cases. Here the sentence was fixed before, but the parole violation occurred after the 1941 amendment which continued the power to redetermine under changed procedure. It does not follow that the action pursuant to the law as amended renders it *ex post facto* in the petitioner's case. An *ex post facto* application may arise

where a violation of parole occurs prior to an amendment and it is sought then to apply the law as amended. But that result does not follow in the case where, as here, the law is applied which was in force at the time the violation occurred. In this case the application of the law in force at that time did not aggravate or increase the punishment for the original crime, which was confinement in prison for a term between the minimum and maximum prescribed by law. In the absence of any such result, and in the absence of a restriction against the change of a sentence once fixed, the rules govern which apply in the case of the violation of a penal statute, namely, that the punishment for the violation shall be pursuant to the law in force at the time the violation was committed. The petitioner had no constitutional guarantee against a change in the law relating to punishment for future offenses or violations of parole. His rights under the facts were determined by the law in force at the time he committed the violation of his parole. The order refixing the petitioner's sentence was based on that law. It was therefore a valid exercise of the power of the Adult Authority.

The writ is discharged and the petitioner is remanded.

Gibson, C. J., Edmonds, J., Carter, J., Traynor, J., Schauer, J., and Spence, J., concurred.

Petitioner's application for a rehearing was denied April 15, 1946.