## Commonwealth ex rel. Schmidt v. Healey

*Louis G. Feldmann*, district attorney, and *Harold Rosenn*, assistant district attorney, for the Commonwealth.

*Nicholas R. Degillio*, for relator.

*David H. Weiner*, for appellant.

PINOLA, J., May 5, 1953.—Through these proceedings relator seeks relief from confinement in the Luzerne County prison, alleging that he is illegally confined.

He was sentenced, upon conviction for the crimes of burglary and larceny, to a term in the Luzerne County prison of not less than three years nor more than seven years, effective September 14, 1945. On

March 8, 1949, relator was released on parole. Early in November 1951 he violated the conditions of his parole by leaving the jurisdiction without permission of the Parole Board, and as a consequence, on December 17, 1951, the board declared him delinquent as of November 4, 1951. Finally, on February 6, 1953, he was arrested on the warrant of the Pennsylvania Board of Parole, and on March 2, 1953, that board ordered his return to the county prison as a technical violator with no credit for delinquent time while on parole. This it did in pursuance of provisions added by section 5 of the Act of August 24, 1951, P. L. 1401, to section 21 of the Act of August 6, 1941, P. L. 861, 61 PS §331.21.

Relator contends that since he was on parole when it was passed, the Act of 1951 is, as to him, ex post facto as it changed his status and added additional punishment.

An ex post facto law is one which makes a crime of an act which, when committed, was not a crime, or a law which increases the punishment for an act already committed: Commonwealth ex rel. Wall v. Smith et al., 345 Pa. 512.

We must determine, therefore, whether that act may be applied under the circumstances of this case.

Subsection (b) of section 21.1 (61 PS §331.21) provides as follows:

"Technical violators. Any parolee under the jurisdiction of the Pennsylvania Board of Parole released from any penal institution in the Commonwealth who, during the period of parole, violates the terms and conditions of his parole, other than by the commission of a new crime . . . may be recommitted after hearing before the board to the institution from which he was paroled or to any other institution to which legally transferred as a parole violator. If he is so recom-

mitted, he shall be given credit for the time served on parole in good standing but with no credit for delinquent time, and may be reëntered to serve the remainder of his original sentence or sentences. Said remainder shall be computed by the board from the time his delinquent conduct occurred for the unexpired period of the maximum sentence imposed by the court without credit for the period the parolee was delinquent on parole, and he shall be required to serve such remainder so computed from the date he is taken into custody on the warrant of the board. Such prisoner shall be subject to reparole by the board whenever in its opinion the best interests of the prisoner justify or require his being reparoled and it does not appear that the interests of the Commonwealth will be injured thereby."

Under the provisions of the Act of 1941 relator would receive credit even for delinquent time up to the time of his arrest, and he would be entitled to be released.

As stated in Commonwealth ex rel. Banks v. Cain, 345 Pa. 581, 585:

"A parole, . . . does not obliterate the crime or forgive the offender. It is not an act of clemency, but a penological measure for the disciplinary treatment of prisoners who seem capable of rehabilitation outside of prison walls. It does not set aside or affect the sentence; the convict remains in the legal custody of the state and under the control of its agents, subject at any time, for breach of condition, to be returned to the penal institution."

The grace extended by parole is the grace of the law and only by faithful pursuance of the legislature's directions can the board act competently: Commonwealth ex rel. Tate v. Burke, Warden, 364 Pa. 179.

In Commonwealth ex rel. Banks v. Cain, supra, the

provisions of the Act of August 6, 1941, P. L. 861, which created the Pennsylvania Board of Parole, were applied to a prisoner whose conviction was had prior to the passage of that act. In connection therewith the court stated (p. 588):

"The exercise of the power of parole being but an administrative function which does not impinge upon the judicial power of sentencing the accused in conformity with the law, it follows that the present act may constitutionally be applied to cases where sentences were imposed before its effective date. The sentence is in no wise interfered with, especially since the act provides that a parole cannot be granted until the expiration of the minimum term prescribed by the court. The parolee is not discharged, but merely serves the remainder of his sentence by having his liberty restrained in a manner analogous to that employed in the 'trusty' or 'honor' system of prison discipline. 'The parole authorized by the statute does not suspend sentence or operate to shorten the term. While on parole the convict is bound to remain in the legal custody and under the control of the warden until the expiration of the term. . . . While this is an amelioration of punishment, *it is in legal effect imprisonment*': Anderson v. Corall, 263 U. S. 193, 196."

In a similar situation, Commonwealth ex rel. Wall v. Smith et al., 345 Pa. 512, the court held that the application of a law governing paroles to a person convicted previous to its passage does not violate the constitutional prohibition against ex post facto laws.

Here, it is contended that since relator was at the time on parole, the Act of 1951 is being retroactively applied because by its provisions new conditions are attached to his parole which could not have been attached at the time that his parole was originally granted.

Section 56 of the Statutory Construction Act of May 28, 1937, P. L. 1019, 46 PS §556, provides:

"No law shall be construed to be retroactive unless clearly and manifestly so intended by the legislature."

Obviously, the Act of 1951 can have no force and effect as to any act committed by the parolee prior to its effective date but, we believe, it does apply to an act committed after that date.

We know of no Pennsylvania case in point.

However, in In re Etie, 27 Cal. 2d 753, 167 P. 2d 203, 207, the court held:

". . . The petitioner had no constitutional guarantee against a change in the law relating to punishment for future offenses or violations of parole. *His rights under the facts were determined by the law in force at the time he committed the violation of his parole . . .*" (Italics supplied.)

And in Pinkerton v. State, 198 So. 157 (Ala. Ct. of Appeals, 1940), where an act of the legislature dealt with convicts then on parole, the court declared:

"The assertion of appellant that the Legislature was without authority to deal with convicts then on parole does not impress us. In addition to the consistency and logic of the position to the contrary, as demonstrated above, it may be added that parole is not a right, and has never been so regarded, but is a privilege, and the procedure or conditions for the retaking of parole violators may be altered after parole so as to affect the parolee, so long as the punishment is not increased. Malloy v. South Carolina, 237 U. S. 180, 184, 35 S. Ct. 507, 59 L. Ed. 905; Duncan v. Missouri, 152 U. S. 377, 382, 14 S. Ct. 570, 38 L. Ed. 485; People v. Hunt, D. C., 25 F. Supp. 647."

Similarly, in Lindsley v. Board of Managers of New Jersey State Prison, 107 N. J. L. 51, 151 Atl. 294, where, prior to the repeal of the pertinent statute,

a prisoner could earn credits toward a commutation of his sentence, the court held that the repealing statute was not ex post facto as to commutation credits not yet earned even though the crime was committed prior to the passage of the repealing statute.

The Act of 1951 was in force at the time that relator committed the act which constituted a technical violation of his parole under the provisions of that act. As to such violation, the act is not retroactive but prospective in its application.

We conclude, therefore, he is not entitled to be discharged.

Now, May 5, 1953, the writ is dismissed and Carl Schmidt is remanded to the Luzerne County prison.