## Commonwealth ex rel. Kinder v. Day, Warden

*George Kinder*, P. P., for petitioner.

*Abraham J. Levy*, Deputy Attorney General; *Armand Della Porta*, assistant district attorney, and *Richardson Dilworth*, district attorney, contra.

CARROLL, J., May 24, 1954.—Relator, George Kinder, brings this writ of habeas corpus to secure his release from the Eastern State Penitentiary on the ground of illegal recommittment for parole violation and illegal detainer. The sole question raised by the petition is whether the Act of August 24, 1951, P. L. 1401, sec. 5, 61 PS §331.21a(*b*) governs where a person was paroled and declared a technical violator prior to the passage of the act, but not arrested or recommitted until after the effective date of the statute.

The pertinent facts are as follows: On March 14, 1947, petitioner was convicted of burglary and was sentenced to a term of three to six years in Eastern State Penitentiary, the sentence to date from March 6, 1947. He was paroled on May 28, 1951, at which time he had served 4 years, 2 months and 12 days of his sentence. It should be noted that at the time of his parole the controlling statute was the Act of August

6, 1941, P. L. 861. One week after his release he was declared delinquent because he had violated the terms of his parole by leaving the jurisdiction without consent of the officials. Hence his status was that of a parolee who had been sentenced, paroled, and had become a violator prior to the effective date of the Act of 1951 although he was neither apprehended nor recommitted until after the passage of that statute.

In May 1953 he was arrested in Ohio where he had gone when released from the Eastern State Penitentiary and there served a sentence of one month upon conviction of petty larceny. The Ohio authorities learned that he was a parole violator and held him for Pennsylvania. On October 4, 1953, he was recommitted to the Eastern State Penitentiary, the recommitment to date from July 7, 1953, since this was the date of his release by the Ohio authorities. At the time of his recommitment the Act of August 21, 1951, was in effect and under this act the remainder of his sentence was held to be 1 year, 6 months and 12 days from July 7, 1953. Thus under this computation he will be discharged on February 13, 1955.

It is quite clear that prior to the Act of 1951 he could not have been recommitted by Pennsylvania in October 1953. At the time of his apprehension in Ohio the maximum period of his sentence had expired and under the ruling of our Supreme Court in Commonwealth ex rel. Tate v. Burke, Warden, 364 Pa. 179 (1950), one arrested after the expiration of his maximum sentence, as originally computed, even though delinquent for the entire period of his parole, cannot be recommitted. The Tate case produced the anomalous result whereby the longer a violator eluded the authorities the shorter the period he had to serve upon recommitment. It was to negate the effect of this ruling that the Act of 1951 was passed. This act provides for recommitment of the violator for such period

as he has been delinquent with credits allowed for the period of his good behavior. Petitioner takes the position that this act cannot be applied to him since it would be an unconstitutional application of an ex post facto law and would result in an increase in his penalty.

The question presented is a novel one and there are no clear cut decisions in our jurisprudence that answer it. The Attorney General in Parole Violators, 83 D. & C. 32, held that the act is constitutional and applicable to persons sentenced, paroled and absconded but not yet recommitted at the effective date of the statute. The constitutional principle that invalidates ex post facto laws has been held to apply only to penal laws or those affecting contractual obligations: Weister v. Hade, 52 Pa. 474 (1866).

Preliminarily we dismiss relator's contention that parole is a form of contract as well as his assertion that no law can be enacted which changes the status existing at the time the parole is granted. It is quite clear that a parole is not a contract in the sense of that term as interpreted by our courts in adjudicating cases involving the impairment of a contractual obligation. As the Supreme Court stated in Commonwealth ex rel. Wall v. Smith et al., 345 Pa. 512 (1942):

"When this relator was granted a parole in September, 1937 he was simply released from prison on specified conditions. This release was at all times revocable for breach of its conditions. When such a breach occurred by this relator's criminal act three months later, the state had a right to demand the serving of the balance of his sentence *in the penitentiary* instead of serving it *outside* the penitentiary and under the technical custody of the state and under the supervision of parole officers. He forfeited his qualified liberty by his misconduct."

With respect to penal laws a statute is not ex post facto unless it makes a crime of an act which when

committed was not a crime or increases the punishment for an act already committed. See Commonwealth ex rel. Wall v. Smith et al., supra; also United States ex rel. Forino v. Garfinkel, 166 F. 2d 887 (C. A. 2 (1948)). The Supreme Court of the United States held in Gryger v. Burke, Warden, 334 U. S. 728 (1948), that the fact that one of the convictions which entered into calculations by which a prisoner became a fourth offender occurred before the Pennsylvania Habitual Criminal Act was passed did not make the act invalid as ex post facto legislation. Similarly in United States v. Gamasposki, 72 F. Supp. 982 (D. C. of Pa. (1947)) an amendment to the three years' statute of limitations on criminal prosecution for violation of the Bankruptcy Act was held not to be ex post facto even though applied to proceedings pending when the amendment went into effect. We are of opinion that in this case the legislation is not ex post facto. Clearly, no new act has been made a crime nor have any conditions been added to parole which did not exist at the time petitioner was paroled.

The distinction that must be borne in mind in determining whether an act is ex post facto is the distinction between an act that will punish an earlier offense and an act that provides a different penalty for a new offense. Just as the statute of limitations for a crime of concealment in bankruptcy could be extended while a bankruptcy is pending and the concealment is being continued so in this case the legislature has the power to change the period of computation for recommitment when a parole violator is apprehended. This is not the case of a man imprisoned, paroled, and recommitted before the Act of 1951 was passed. We have here a person who was a parole violator and unapprehended.

The Attorney General cites the case of In re Ette, 27 Cal. 2d 753, 167 P. 2d 203, 207 (1946). Although there is no Pennsylvania case directly in point we

believe that the reasoning and the principles set forth in Commonwealth ex rel. Banes v. Cain, 345 Pa. 581 (1942), leads to a like result in this case. Although the California case is not binding we think it to be persuasive authority for the proposition that one on parole has no constitutional guarantee against a change in the law relating to punishment for continuing offenses or violation of parole.

Accordingly, we enter the following

### Order

And now, to wit, May 24, 1954, petitioner within having been heard, the petition is dismissed and the writ is denied.