Filed 3/27/26  In re J.V. CA3

<u>NOT</u> <u>TO</u> <u>BE</u> <u>PUBLISHED</u>

California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

THIRD APPELLATE DISTRICT

(San Joaquin)

----

| | |
|---|---|
| In re J.V., a Person Coming Under the Juvenile Court Law. | C103279 |
| THE PEOPLE,<br><br>Plaintiff and Respondent,<br><br>v.<br><br>J.V.,<br><br>Defendant and Appellant. | (Super. Ct. No. JJC-JV-DE-2023-0001590) |

J.V. appeals from an order declaring him a ward of the juvenile court and committing him to a secure youth treatment facility.  J.V. contends:  (1) the juvenile court imposed unconstitutional probation conditions impossible for him to comply with while confined in the secure youth treatment facility, and (2) his predisposition custody credits should have been applied against the period of time from commitment until he reached the age of 25.  We affirm.

1

## FACTUAL AND PROCEDURAL BACKGROUND

The underlying facts are not relevant to the issues on appeal. In sum, on November 25, 2023, a window accidentally broken at an apartment complex led a group to gather. While discussing the events leading to the broken window, the group used gang slang and displayed gang signs. The group departed, but one of them, J.V., later returned and shot the victim, who died in the hospital the next day.

On December 11, 2023, the San Joaquin County District Attorney filed a juvenile wardship petition under Welfare and Institutions Code[1] section 602, subdivision (a), charging J.V. with murder (count 1), discharging a firearm in a grossly negligent manner (count 2), two counts of assault with a semiautomatic firearm (counts 3 & 4), and criminal street gang activity (count 5). The petition further alleged as enhancements to the murder count that J.V. personally and intentionally discharged a firearm causing great bodily injury, as to counts 1 through 4 that J.V. committed these offenses for the benefit of a criminal street gang, and as to counts 2 through 4 that J.V. personally used a firearm.

In November 2024, the juvenile court conducted a contested jurisdictional hearing. After the close of evidence, the court granted the prosecution's motion to dismiss the gang enhancements and gang charge. On December 12, 2024, the juvenile court found counts 1, 2, 3, and the associated firearm enhancements to be true. The court found count 4 to be not true. At a disposition hearing on January 13, 2025, the juvenile court found J.V. to be a ward of the court, declared the current offense a felony, and committed J.V. to a secure youth treatment facility for a baseline term of seven years, with a maximum term of confinement of 25 years to life. The court applied 403 days of predisposition custody credits against the maximum term of 25 years to life. The court

---

[1] Undesignated statutory references are to the Welfare and Institutions Code.

also ordered a number of probation conditions recommended by the probation department.

J.V. appeals.

DISCUSSION

I

*Probation Conditions*

J.V. contends three of the probation conditions ordered by the juvenile court are unconstitutionally vague and overbroad. Specifically, he complains these conditions appear to apply immediately but are impossible to comply with while he is confined in the secure youth treatment facility. We are not persuaded.

At the disposition hearing, the juvenile court adopted the "[f]indings and [o]rders" attached to the probation report dated January 8, 2025, which were also attached to the court's January 13, 2025 minute order from the disposition hearing. This document included a number of probation conditions, three of which J.V. challenges on appeal: "19. The minor is ordered not to illegally use or possess any drug, narcotic, marijuana or alcohol, or to associate with persons known to use, possess or traffic in these substances, or to frequent places where he knows they are used unlawfully;" "27. The minor is ordered not to associate with anyone known to the minor to be on probation or parole;" "52. Parent(s)/[g]uardian(s) [are ordered] to participate in counseling with minor, and cooperate fully with the [j]uvenile [c]ourt and the [p]robation [d]epartment, pursuant to [section] 727."

J.V. argues that probation condition No. 19 is (1) vague because it is unclear if it applies immediately while he is confined in the secure youth treatment facility or on release and (2) overbroad if applied while he is confined because it could apply to prohibit him from associating with everyone in the secure youth treatment facility. Similarly, J.V. argues probation condition No. 27 "not to associate with anyone on probation or parole" could apply to prohibit him from associating with "everyone" in the

3

secure youth treatment facility. Lastly, J.V. maintains that probation condition No. 52 is vague as to whether it applies to the present or future, because it "only makes sense, as set forth in . . . section 727, subdivision (c), if [the parents] have physical custody of [J.V.]"

J.V. bases these arguments on the purported uncertainty as to whether these probation conditions apply while he is confined in the secure youth treatment facility. He does not otherwise contend the content of the conditions renders them unconstitutionally vague or overbroad.

Judges have broad discretion in establishing probation conditions in juvenile cases. (*In re Antonio R.* (2000) 78 Cal.App.4th 937, 940; § 730, subd. (b).) Juveniles generally require more guidance and supervision than adults. (*Antonio R.*, at p. 941.) When the state assumes responsibility for a juvenile, it stands in the shoes of a parent and may, like a parent, restrict the child's exercise of constitutional rights. (*Ibid.*)

A probation condition that imposes limitations on constitutional rights, however, must be closely tailored to the purpose of the condition to avoid being constitutionally overbroad. (*In re Ricardo P.* (2019) 7 Cal.5th 1113, 1118; *In re Sheena K.* (2007) 40 Cal.4th 875, 890.)[2] In addition, a probation condition cannot be so vague that people

---

[2]    Section 730 was amended effective January 1, 2026. (Stats. 2025, ch. 575, § 9.) As amended, section 730, subdivision (b) in relevant part now requires probation conditions to meet the following requirements: "(1) The conditions are individually tailored, developmentally appropriate, and reasonable. [¶] (2) The burden imposed by the conditions shall be proportional to the legitimate interests served by the conditions." While this amendment does not materially change the requirements articulated in *Sheena K.*, applicable law here is the statute in force at the time of disposition. (See *In re Etie* (1946) 27 Cal.2d 753, 760.) In 2025, section 730, former subdivision (b) provided in relevant part: "The court may impose and require any and all reasonable conditions that it may determine fitting and proper to the end that justice may be done and the reformation and rehabilitation of the ward enhanced." (See *In re Antonio R.*, *supra*, 78 Cal.App.4th at p. 940.)

of common intelligence must guess at its meaning and differ as to its application. (*In re Sheena K.*, at p. 890; see also *In re Victor L.* (2010) 182 Cal.App.4th 902, 910.)

Preliminarily, the People claim J.V. forfeited a challenge to these probation conditions by failing to object below, arguing, "As applied constitutional challenges are forfeited unless previously raised," citing *In re Sheena K.*, *supra*, 40 Cal.4th at page 889. The People argue that, while J.V. claims to mount a facial challenge to his probation conditions, he states in his opening brief that the conditions are vague and overbroad in their application, in that he cannot comply with them while confined in a secure youth treatment facility. While a claim on appeal that a probation condition is facially unconstitutionally vague or overbroad is not forfeited by failure to raise the issue in juvenile court, the claim is forfeited when a challenge requires reference to the record developed in the lower court or remand for further findings, i.e., an as-applied challenge. (*Id*. at pp. 886-887; *People v. Patton* (2019) 41 Cal.App.5th 934, 947.) We need not resolve whether J.V. has made a facial or as-applied challenge to these probation conditions. Notwithstanding a claim of forfeiture, the People address J.V.'s claims on the merits. We will exercise our discretion to do the same. (*Sheena K.*, at p. 887, fn. 7 ["In general, forfeiture of a claim not raised in the trial court by a party has not precluded review of the claim by an appellate court in the exercise of that court's discretion"].)

Turning to the merits, we disagree that the challenged probation conditions are vague or overbroad because they are seemingly applicable to J.V. when confined in the secure youth treatment facility. J.V. fails to consider the nature of probation. Probation by definition refers to a period when an offender is released into the community. (Pen. Code, § 1203, subd. (a) [defining probation as "the suspension of the imposition or execution of a sentence and the order of *conditional and revocable release in the community*" (italics added)].) " 'Probation is generally reserved for convicted criminals whose *conditional release* into society poses minimal risk to public safety and promotes rehabilitation.' " (*People v. Moran* (2016) 1 Cal.5th 398, 402, italics added, quoting

5

*People v. Carbajal* (1995) 10 Cal.4th 1114, 1120.)  "Generally speaking, conditions of probation 'are meant to assure that the probation serves as a period of genuine rehabilitation and that the community is not harmed by the probationer's being *at large*.' "  (*People v. Olguin* (2008) 45 Cal.4th 375, 380, italics added.)  Thus, probation conditions apply upon a juvenile's release from the custody of the secure youth treatment facility.

In addition, "[a] probation condition should be given 'the meaning that would appear to [be reasonable to] a reasonable, objective reader.' "  (*People v. Olguin*, *supra*, 45 Cal.4th at p. 382.)  Applying this standard, examination of the wording of the conditions challenged confirms that they are intended to apply upon release.  Probation condition No. 19, for example, orders J.V. not to "frequent places where he knows" drugs or alcohol are used unlawfully.  While confined, J.V. has no occasion to "frequent places" other than the secure youth treatment facility where he is confined.  Probation condition No. 27 orders J.V. not to associate with anyone he knows "to be on probation or parole."  J.V. argues, "Every person in that [secure youth treatment facility] placement must be on probation."  Not so.  No one committed to a secure youth treatment facility is on probation; they are confined.  As to probation condition No. 52, J.V. acknowledges, "[T]his seems like a term better served when [J.V.] is out of placement and presumably living with his parents."  Indeed, section 727, subdivision (c) referenced in this condition, provides, "[I]f the court orders that a parent or guardian *shall retain custody of that minor* . . . the parent or guardian may be required to participate with that minor in a counseling . . . program."  (Italics added.)  We conclude a reasonable interpretation of these particular conditions is that they apply to J.V. upon his release on probation.  Accordingly, J.V. has not established that the challenged conditions are unconstitutionally vague or overbroad.

## II

### *Predisposition Credits*

J.V. claims that the juvenile court chose confinement "until age 25" as the maximum period of confinement, therefore section 875 requires that the 403 days of predisposition credits awarded be applied against the period from disposition until he reaches the age of 25. We disagree.

J.V. quotes the "[f]indings and [o]rders" from the probational dispositional report attached to the juvenile court's minute order from the disposition hearing, which stated: "8a. The [c]ourt determines the maximum period of confinement time to be until age 25." J.V. contends that this is the relevant period of time for application of predisposition credits. J.V. omits that the juvenile court stated at the disposition hearing: "The maximum confinement time is as stated in the report. [¶] If this were charged -- if the minor were charged and tried in [a]dult [c]ourt, that would be 25 years to life." The juvenile court subsequently stated that J.V. "has 403 days of credit toward the aggregate maximum confinement time."

The juvenile court's ruling reflects the timelines set forth in section 875, which governs juvenile wards placed in a secure youth treatment facility. Section 875, subdivision (c)(1) provides: "In making its order of commitment, the court shall . . . set a maximum term of confinement for the ward based upon the facts and circumstances of the matter or matters that brought or continued the ward under the jurisdiction of the court and as deemed appropriate to achieve rehabilitation. The maximum term of confinement shall represent *the longest term of confinement in a facility that the ward may serve* subject to the following: (A) A ward committed to a secure youth treatment facility under this section shall not be held in secure confinement beyond 23 years of age, or two years from the date of the commitment, whichever occurs later. However, if the ward has been committed to a secure youth treatment facility based on adjudication for an offense or offenses for which the ward, if convicted in adult criminal court, would face an

7

aggregate sentence of seven or more years, the ward shall not be held in secure confinement beyond 25 years of age, or two years from the date of commitment, whichever occurs later.  [¶]  (B) The maximum term of confinement shall not exceed the middle term of imprisonment that can be imposed upon an adult convicted of the same offense or offenses. . . .  [¶]  (C) Precommitment credits for time served must be applied against the maximum term of confinement as set pursuant to this subdivision."  (Italics added.)

In *In re L.H.* (2025) 110 Cal.App.5th 591, 606, the court held, "[T]he age limits found in section 875, subdivision (c)(1)(A) constitute a cap on the length of a ward's physical confinement *separate* from the maximum term of confinement set by the juvenile court in its order of commitment."  (See also *In re M.B.* (2024) 99 Cal.App.5th 435, 449-450 [maximum term of confinement of 22 years went beyond the statutory age cap].)  The *L.H.* court reasoned that the " 'subject to' " language at the end of subdivision (c)(1) of section 875 preceding subparagraph (A) "is consistent with an interpretation of the subparagraph[] . . . as more broadly governing the ward's actual length of confinement instead of the juvenile court's discretion to set a maximum term of confinement."  (*L.H.*, at p. 600.)  In other words, if subparagraph (A) "limit[s] a ward's confinement time to a term shorter than that set by the juvenile court in the exercise of its discretion, the shorter term governs the ward's actual confinement time."  (*L.H.*, at p. 601.)  This subparagraph, while "limiting the actual length of a ward's confinement time," does not limit "the juvenile court's discretion to set a maximum term of confinement."  (*Ibid.*)

Here, the juvenile court determined J.V.'s maximum term of confinement was 25 years to life under section 875, subdivision (c)(1) and applied his 403 days of predisposition credits against that term under section 875, subdivision (c)(1)(C).  Where the plain meaning of statutory language is clear, we must follow it.  (*In re N.R.* (2023) 15 Cal.5th 520, 538; *In re L.H.*, *supra*, 110 Cal.App.5th at p. 607.)  Therefore, the

8

juvenile did not err in applying J.V.'s predisposition credits against the maximum term of 25 years to life. (*L.H.*, at p. 607.)

DISPOSITION

The January 13, 2025 disposition order is affirmed.

/s/_____
ROBIE, Acting P. J.

We concur:

/s/_____
MAURO, J.

/s/_____
WISEMAN, J.*

---

\*     Retired Associate Justice of the Court of Appeal, Fifth Appellate District, assigned by the Chief Justice pursuant to article VI, section 6 of the California Constitution.