William **ELLHAMER**, Petitioner,

v.

Lawrence E. **WILSON**, Warden, Respondent.

No. 46545–AJZ.

United States District Court, N. D. California.

Sept. 12, 1969.

Order Setting Aside Redetermination of Sentence April 14, 1970.

John H. Colteaux, Ackeret & Colteaux, San Rafael, Cal., for petitioner.

Thomas C. Lynch, Atty. Gen. of the State of California, John T. Murphy, James B. Cuneo, Deputy Attys. Gen., San Francisco, Cal., for respondent.

## ORDER GRANTING IN PART PETITION FOR WRIT OF HABEAS CORPUS.

ZIRPOLI, District Judge.

In this case the court granted petitioner, a California state prisoner, an evidentiary hearing for the purpose of inquiry into the constitutional validity of petitioner's 1961 conviction of the crime of armed robbery. For the purpose of that hearing the court deemed the petition to have been amended to enable petitioner to make each of the claims hereinafter discussed and acted upon by the court, including his claim that the order of the Adult Authority of the State of California of June 30, 1961, cancelling his parole and redetermining his state sentence for robbery in the first degree imposed in 1953 was constitutionally impermissible and hence invalid.

Petitioner's contentions are five in number and consist of the following:

1. That petitioner was denied due process of law in his 1961 conviction in that the prosecution or agents of the prosecution deliberately or negligently suppressed purported evidence of the petitioner's innocence;

2. That petitioner was denied due process of law in that petitioner was deprived of the right to compel the production of a key witness;

3. That the affirmance of petitioner's 1961 conviction by the California Court of Appeal, despite the rejection by the trial court of a proffered instruction covering specific intent, deprived petitioner of due process of law and equal protection of the law;

4. That petitioner's sentence and punishment received as a result of his 1961 conviction was so wholly and arbitrarily disproportionate to the sentence given his codefendant as to constitute a denial of equal protection of the law;

5. That the revocation of petitioner's parole (on the 1953 sentence) and redetermination without a hearing and benefit of counsel of a prior term fixed

by the Adult Authority deprived him of due process of law.

The evidence adduced at the evidentiary hearing and petitioner's statement of the law fail to support all but the last claim.

### Summary of Evidence

A summary of the circumstances of the robbery and evidence of petitioner's guilt thereof based upon the transcript of the proceedings at petitioner's trial, which is part of the record before this court, can be found in the opinion of the California Court of Appeal affirming petitioner's conviction. People v. Ellhamer, 199 Cal.App.2d 777, 18 Cal.Rptr. 905 (1962). That summary discloses:

On March 3, 1961, at approximately 11:45 a. m., defendant Donald Baxter walked up to Donald McPherson, assistant manager for Lucky Stores in Norwalk, California, as McPherson was writing up a grocery order. Defendant Baxter pulled a gun on McPherson and told McPherson to take him to the manager. The two men walked to the manager's office at the back of the store and McPherson motioned for the manager, Kenneth Green, to come out of the office.

McPherson told the manager, "This man's got a gun on me. He said that he's going to kill us if we don't give him the money." Defendant Baxter gave the manager a pillow case and told him to put the money in it. The manager went into the back office, opened the safe, put $1,250 into the pillow case and returned it to defendant Baxter. Baxter then fled from the store. McPherson pursued him. Outside the store McPherson saw defendant Baxter running through a parking lot and into an alley. When McPherson got to the alley, he noticed a blue Corvair, license number VBK 082, parked behind a barber shop located near the store. The hood was up and the door on the driver's side was open. He saw appellant [Ellhamer] close the hood of the Corvair. He saw him throw a pillow case in the back seat of the car. Ellhamer then entered the car. He sped away without stopping at the street intersections, spinning his wheels as he turned the corners.

Shortly thereafter Los Angeles Deputy Sheriff Paul A. Strohman went to a Bellflower address in response to report that a car, previously reported to have been involved in a robbery, was located there. He discovered the car. There were two other deputies and several other people at the location. The deputies were informed that the two men who had gotten out of the car were in Apartment E at that address. The two deputies went to the front steps of the apartment while Deputy Strohman went around to the back. As he rounded the back of the building he observed defendant Baxter jumping from the second story window. Baxter had a pillow case with him. He apprehended Baxter, searched the pillow case and found in it $1,250, a loaded gun and some make-up equipment.

The officers then went to Apartment E where they knocked on the door and called out that they were police officers. There was no response so the officers used a pass key given them by the manager of the apartment to open the door. Upon searching the apartment Officer Strohman and the other officer discovered appellant lying under a bed. Appellant was apparently "stuck" under the bed, unable to get out until the officers dismantled the bed and lifted it off him. The only statements appellant made at this time were "They made me drive," and when asked who, he said, "Joe made me."

At the trial, McPherson identified appellant as the man who sped away from the scene of the robbery in a Corvair after closing the Car's hood. Officer Strohman identified him as the person who later was found under a bed in the apartment in front of which the Corvair was parked a few

minutes after the robbery. McPherson previously had identified appellant in a police lineup on the day of the robbery. The pillow case which McPherson said he saw appellant throw into the Corvair was also identified by McPherson. According to the manager of the store, Mr. Green, the pillow case was similar to the one in which he placed the money.

During the course of the habeas corpus evidentiary hearing, it was established that both petitioner and his co-defendant Baxter had been convicted of robbery on several prior occasions, that they had known each other for a period of years and each acknowledged that he was aware that the other had been previously convicted of robbery.

Deputy Sheriff Brown testified that he and his partner, Deputy Graves, interrogated Baxter following his arrest. Baxter was positively identified as having participated in numerous other robberies in which he had been driven from the scene by an accomplice who was not identified. Baxter readily admitted his guilt and, at an early stage of the investigation, Baxter voluntarily indicated that he intended to enter a plea of guilty in order to avoid serving any unnecessary "dead time." (R.T. 140, 157–158, 160, 171).[1] While he readily admitted his own guilt, Baxter informed the deputies that he would tell them nothing with respect to the guilt of any other person (R.T. 156). Brown's account of Baxter's cooperation and indication that he intended to plead guilty were corroborated by Deputy Graves (R.T. 304–305). Charges were filed against Baxter on two Los Angeles offenses which he admitted.

During a subsequent interrogation, Baxter informed deputies Brown and Graves that he had been asked to testify on petitioner's behalf in order to "take him off the hook." (R.T. 161, 306, 313). Brown responded by asking Baxter if he was willing to perjure himself on petitioner's behalf (R.T. 161, 307, 325). Brown testified that he had asked Baxter this because he believed that petitioner was not only guilty of the offense of which he was charged but that petitioner had also participated in other robberies of a similar character in which a vehicle similar to the one owned by petitioner had been employed (R.T. 129–130). Brown was also aware that the manager of the Lucky Store had observed petitioner place the sack in the car before driving from the scene (R.T. 161).

Both deputies denied that Baxter ever told them that petitioner was innocent (R.T. 159, 308, 319). Both denied that either or both of them had approached Baxter for the purpose of dissuading him from testifying on behalf of petitioner (R.T. 158, 174). They further denied that they had ever informed Baxter that additional charges would be filed against him or that he would be prosecuted as an habitual criminal if he testified. They denied that Baxter had ever been informed that he would be allowed to plead guilty to a single count and receive a concurrent sentence if he did not testify (R.T. 142, 148, 158, 164–165, 325–326). It is undisputed that Baxter entered a plea of guilty on one count of robbery and received a concurrent sentence.

During the course of the criminal proceedings against him, petitioner was represented by attorney Robert Krause (R.T. 263), who had also represented petitioner in his 1953 trial. Robert Krause testified that during the course of his preparation of petitioner's defense, he spoke to Baxter once. Baxter refused to discuss the case and said he would not testify on petitioner's behalf because other charges were pending against him and that if he did not cooperate he would be "buried" (R.T. 266–268). Nevertheless, Krause placed Baxter under subpoena. Krause testified that he did so in the hope that Baxter might subsequently

---

1. The references in parenthesis are to the pages of the Reporter's Transcript of the habeas corpus evidentiary hearing.

change his mind and decide to testify for petitioner (R.T. 268). The subpoena was served on Baxter in the Los Angeles County Jail on April 11, 1961. Baxter was sentenced on April 19, 1969, and was delivered to Chino on May 2, 1961.

When petitioner's case came on for trial on May 2, 1961, and Baxter was not present, Krause did not request the District Attorney to produce him or request the court to order his production (R.T. 281, 287). Krause testified that he would not have put Baxter on the stand even if he had been present without having an opportunity to discuss his testimony. Krause further testified that he would have been reluctant to call Baxter as a witness because his credibility would have been severely challenged by proof of his numerous prior felony convictions. Finally, Krause testified that he had a good case without Baxter's testimony and that, in light of the foregoing considerations, he would not have called Baxter as a witness even if he had been present (R.T. 281–282, 286).

Oliver Feifer, the Deputy District Attorney who prosecuted the case against petitioner, testified that at no time was he ever aware that Baxter might have made any statement in exoneration of the petitioner or otherwise intended to testify on petitioner's behalf (R.T. 329, 331–332, 334). Feifer indicated that defense counsel Krause had expressed a desire to establish that Baxter had entered a plea of guilty to the crime with which petitioner was charged. Feifer was reluctant to enter into a stipulation to that effect and would have preferred that Baxter appear and testify. Krause, however, wished only to establish that Baxter had pleaded guilty to the offense with which petitioner was charged and the court took judicial notice of that fact (R.T. 330–331).

1. *The evidence fails to establish that the prosecution deliberately or negligently suppressed purported evidence of petitioner's innocence.*

Petitioner's first argument relates to the issue of suppression of evidence raised by the allegations of his petition and the affidavit of Baxter in support thereof (and the hoped for favorable testimony at the evidentiary hearing). This claim presents issues of fact, the ultimate resolution of which rests upon the truth or falsity of the allegations in Baxter's affidavit.

Initially, the court must consider the character and motives of Baxter. He was first convicted of a felony in 1943 when he entered a plea of guilty to three counts of armed robbery in Los Angeles County. In 1948 he again entered a plea of guilty to a charge of armed robbery. In 1955 he was paroled to Oklahoma to face a charge of robbery with firearms. His next conviction was based upon his plea of guilty in the case which is the subject of these proceedings. Thereafter, in 1966 he was convicted on a plea of guilty to the charge of escape from prison, and in 1967 he entered a plea of guilty to a charge of armed robbery in Orange County.

By his own admission, Baxter had been an associate of petitioner's for a number of years prior to their arrest in 1961. While the nature of this relationship is not clear from the testimony at the evidentiary hearing in this case, it can be reasonably inferred (and the court does so infer) that the two men were friends and that Baxter was not adverse to submitting the affidavit which he hoped would result in petitioner's release. This fact, together with the following considerations:

(1) the timing of his affidavit (many years after the trial;

(2) Baxter's failure to make any reference to petitioner's innocence to either the public defender who represented him or to the probation officer;

(3) the many inconsistencies in his testimony at the evidentiary hearing;

(4) Baxter's desire to enter a plea of guilty in order to avoid serving any unnecessary "dead time"; and

(5) the refutation of Baxter's material allegations in the affidavit (and

at the evidentiary hearing) by deputies Brown and Graves and in many material respects by petitioner's attorney Krause; lead the court to conclude that the affidavit and testimony of Baxter were deliberately false. The court is satisfied that the two above named deputies testified truthfully as to their recollection of the events and conversations that occurred in their relationship with Baxter.

Petitioner's contention that deputy Brown's inquiry as to whether Baxter intended to perjure himself does not necessarily carry with it an implication that Baxter was threatened by the deputies. In light of the deputies' explanation that they firmly believed that petitioner was in fact guilty, not only of the crime with which he was charged, but also of numerous other offenses in which he had not been positively identified, such inquiry was perfectly natural and legitimate. Perhaps Baxter had not considered the fact that by testifying falsely he would subject himself to a possible perjury prosecution.

The disposition of the charges against Baxter by allowing a plea of guilty to be entered to one count of robbery and receiving concurrent instead of consecutive sentences was perfectly consistent with the fact that he had cooperated with the enforcement officers in admitting his guilt instead of putting the state to the unnecessary expense of bringing him to trial, particularly when one considers that the statutory punishment for the crime to which he pleaded guilty was for a term of five years to life imprisonment. Such sentences even if permitted to run concurrently cannot be seriously said to be unduly lenient. Additionally, as the officers testified (and as Baxter, in this court's view, was aware), all the crimes to which Baxter admitted his guilt or participation would probably be considered by the Adult Authority in fixing his sentence and determining his eligibility for parole. All factors considered, this court does not attribute the disposition of Baxter's case to have been in any way the consequence of promises or threats made to Baxter.

Petitioner's contention that the heavier sentence given petitioner as contrasted with that given Baxter is totally without probative effect upon the issue of suppression of evidence.

The final circumstance offered by petitioner in support of his contention that the prosecution suppressed the testimony of Baxter, namely, that despite Baxter's subpoena he was not produced at the trial but rather was transferred to a state prison on the day that petitioner's trial began, was purely coincidental. Brown testified that a bus was used to transport convicted felons to Chino every Tuesday. The evidence did not establish, and at this late date probably never could establish, why Baxter was not transferred one week earlier. The fact remains that Baxter did arrive at Chino on a Tuesday and that petitioner's trial began the same day. If it were not a regularly scheduled day for effecting such transfers, one might more reasonably infer that there was a more logical explanation than mere coincidence. Under the circumstances of the instant case any such inference would be based purely on speculation. Furthermore it cannot be said that petitioner was prejudiced thereby since defense counsel was aware of Baxter's absence and made no effort to secure his presence at the trial. In fact he did not want Baxter at the trial. Attorney Krause testified that even if Baxter had been present he would not have been called to testify. Additionally, the prosecutor testified that he suggested that Baxter be produced but defense counsel sought only to prove that Baxter had entered a plea of guilty and that Baxter's presence became unnecessary because the trial judge took judicial notice of this fact.

Petitioner has failed to establish that the prosecution or its agents were ever informed or otherwise made aware that Baxter might have testified in exoneration of petitioner if Baxter had been present at petitioner's trial. The record is devoid of any evidence, save that offered by Baxter, which this court disbelieves, that any affirmative action was

taken by the prosecution to preclude Baxter's attendance at petitioner's trial. To the extent that petitioner contends that the prosecution negligently suppressed evidence by failing to produce Baxter at trial even though he was under subpoena, the defense waived the opportunity to compel Baxter's attendance not only by failing to request his presence but by refusing the offer of the prosecution to compel his production.

2. *Petitioner was not deprived of the right to compel the production of a key witness.*

■ For the reasons indicated immediately above the failure of Attorney Krause to request the presence of Baxter at the trial and his rejection of the prosecutor's offer to compel Baxter's attendance constituted a knowing and deliberate waiver of the right to compel the production of Baxter as a witness.

Additionally, Krause testified that there were reasons other than his lack of knowledge of the nature of Baxter's testimony for failing to call him as a witness. One of these was that Krause felt that he had a good case without Baxter's testimony. A second reason is that even if Baxter were called as a witness and testified favorably to petitioner, the advantage of such testimony might be negligible and outweighed following cross-examination and impeachment of Baxter's credibility by virtue of the numerous felony convictions Baxter had previously suffered and his longstanding association with petitioner. Krause's testimony clearly establishes that the failure to compel the production of Baxter as a witness, even if his testimony were favorable, was a deliberate tactical decision. It was a deliberate waiver and this court will not entertain a challenge thereof at this late date.

3. *The affirmance of petitioner's conviction by the California Court of Appeal despite the rejection of the proffered instruction covering specific intent by the trial court deprived the petitioner neither of due process of law nor of equal protection of the law.*

Petitioner asserts that, because he was tried and convicted of aiding and abetting an armed robber, the trial court erred in refusing to instruct on the subject of specific intent to commit robbery. He contends that in affirming this conviction, the California Court of Appeal denied him a federally protected constitutional right. Petitioner was charged, tried and convicted as a principal under California law. See Cal.Pen.Code § 31. He was properly apprised of the theory of the prosecution and afforded due process of law.

■ The thrust of petitioner's argument is directed toward the proposition that, because the California Court of Appeal applied the law differently to petitioner than it had and presently does apply the same law to other defendants under similar factual circumstances, the decision denied petitioner equal protection of the law. He asserts that the decision in his case is a derelict in California law, neither supported by pre-existing authority nor presently followed. His contention is totally without merit. See People v. George, 259 Cal.App.2d 424, 428–429, 66 Cal.Rptr. 442 (1968); People v. La-Peluso, 239 Cal.App.2d 715, 731, 49 Cal. Rptr. 85 (1966); People v. Belenger, 222 Cal.App.2d 159, 166, 34 Cal.Rptr. 918 (1963); People v. Masters, 219 Cal.App. 2d 672, 679–680, 33 Cal.Rptr. 383 (1963); People v. Silva, 143 Cal.App.2d 162, 169, 300 P.2d 25 (1956).

■ At all events, even if the trial court erred in its instructions, such error is not of constitutional proportions and does not present a federally judiciable issue.

4. *Neither petitioner's sentence nor the punishment he received as a result of his 1961 conviction is sufficiently distinguishable from that of his co-defendant as to constitute a denial of equal protection.*

■ While the evidentiary hearing did not disclose the factors which prompted the trial judge to make the petitioner's 1961 sentence run consecutively to his 1953 sentence, petitioner has failed to

present any evidence or autorities which would in any way justify a conclusion that he had been deprived of a federal constitutional right when he was sentenced. Petitioner has sought to whitewash his own conduct and character, both prior to and at the time of the 1961 robbery, while portraying his co-defendant Baxter as an odious character who should obviously have been more severely punished than petitioner. In light of the length and variety of petitioner's own criminal record, and because of the scant attention given to this issue at the evidentiary hearing, this court must conclude that petitioner has not carried his burden of proof on the issue of unequal sentencing.

*5. Parole revocation and redetermination of a prior sentence.*

■ In his final argument, petitioner calls the court's attention to alleged constitutional infirmities in the procedures whereby his parole was revoked and the term of a prior sentence for robbery was redetermined from ten years to the maximum (life). The facts are as follows: Petitioner's 1961 conviction for robbery led to a parole report to the California Adult Authority that petitioner had violated his parole by committing robbery and by associating with persons of bad reputation and a recommendation that parole be cancelled. On June 30, the Adult Authority met and took two actions with regard to petitioner. First, it cancelled petitioner's parole. Second, the Authority refixed the term of the sentence on which petitioner had been paroled at the maximum—life.[2] In October 1961, after petitioner arrived at prison to resume his 1953 sentence, he was urged by an Adult Authority hearing officer to admit the two parole violations. Petitioner did so and the Adult Authority then formally revoked his parole. Up to this time, petitioner had not been informed that his 1953 sentence had been redetermined.

Petitioner asserts the following deficiencies in the refixing of his sentence. He states that he had no notice of the meeting of the Adult Authority and was not in attendance, nor was he represented by counsel. Petitioner further states that the redetermination of the sentence at maximum was arbitrary and a violation of due process in that it was governed by a mandatory policy of the Adult Authority adopted March 6, 1951 and stating in part as follows: "When paroles are cancelled, suspended, and/or revoked, the previous action fixing term will be rescinded (except in those cases where the prisoner is already serving the maximum) and the prisoner shall be considered as serving the maximum term as prescribed in the Indeterminate Sentence Law, subject to further order of the Adult Authority. * * * "

The foregoing asserted constitutional violations injured petitioner in the following manner. At the time petitioner's 1953 sentence was redetermined from ten years to life, petitioner had less than two years to serve on the original term. Had that sentence expired as it was originally set, petitioner would now be serving his 1961 sentence which was imposed con-

2. In California criminal offenses carry statutorily prescribed punishments with minimum and maximum terms. Therefore, a judge can impose a sentence only for the terms "prescribed by law." The judge is without power to fix the precise term or duration of the sentence. Cal. Pen.Code § 1168.

The Adult Authority, a nine-member board appointed by the Governor, is given the power to determine, and redetermine what length of time a sentenced person shall be imprisoned. Cal.Pen.Code §§ 3020, 5077. From 1931 to 1941, a redetermination of a previously fixed sentence "could not be made except after a hearing, at which the prisoner was entitled to be present and produce evidence and witnesses in his behalf." In re Etie, 27 Cal.2d 753, 758, 167 P.2d 203 (1946). This hearing requirement was deleted in 1941 and never reappeared. In 1963, a defendant's attorney was given the right to receive notice, upon request, of the *initial determination* of his client's sentence. Cal.Pen.Code § 3022. No similar provision exists, however, for a *redetermination* of sentence. such as occurred in the instant case.

secutively. By the Authority's redetermination, however, petitioner is still serving his 1953 sentence and will not commence his 1961 sentence until his 1953 sentence is fixed, served, and discharged.

Lurking in the procedures just described are violations of due process and equal protection. The Supreme Court has indicated that additional punishment must be based on findings of fact surrounded by traditional adversary safeguards. See Specht v. Patterson, 386 U.S. 605, 87 S.Ct. 1209, 18 L.Ed.2d 326 (1967); see also Townsend v. Burke, 334 U.S. 736, 68 S.Ct. 1252, 92 L.Ed. 1690 (1948). The effect of the Authority's automatic policy of redetermining at maximum wholly foreclosed to petitioner a question of substantial importance on which it would appear petitioner had a right to be heard. See Stump v. Bennett, 398 F.2d 111 (8th Cir.) cert. denied 393 U.S. 1001, 89 S.Ct. 483, 21 L.Ed.2d 466 (1968); United States ex rel. Thompson v. Rundle, 294 F.Supp. 933 (D.C.1968) (sentence set aside for "utter disregard of relator's interests"). With regard to equal protection, it would seem problematic that parolees whose terms have been fixed at the maximum are immune from the treatment received by petitioner. See Gainey v. Turner, 266 F.Supp. 95 (E.D.N.C.1967); See also Baxstrom v. Herold, 383 U.S. 107, 86 S.Ct. 760, 15 L.Ed.2d 620 (1966); Rinaldi v. Yeager, 384 U.S. 305, 86 S.Ct. 1497, 16 L.Ed.2d 577 (1966); Skinner v. Oklahoma, 316 U.S. 535, 62 S.Ct. 1110, 86 L.Ed. 1655 (1942).

The court passes over these problems, however, and turns to the right of representation by appointed counsel at the sentence redetermination.[3]

The right to counsel at sentencing has been treated by the Supreme Court in two cases. In Mempa v. Rhay, 389 U.S. 128, 88 S.Ct. 254, 19 L.Ed.2d 336 (1967), the Court required that counsel be furnished a defendant at a proceeding where the judge imposes a sentence and can, by recommendation to the parole board, significantly influence the amount of time to be served. The Court required the appointment of counsel at such a proceeding because it constituted a "stage of a criminal proceeding where substantial rights of a criminal accused may be affected." 389 U.S. at 134, 88 S.Ct. at 257. In the Court's view, where the imposition of sentence and influential recommendations concerning its duration are at hand, "the necessity for the aid of counsel in marshaling the facts, introducing evidence of mitigating circumstances and in general aiding and assisting the defendant to present his case as to sentence is apparent." 389 U.S. at 135, 88 S.Ct. at 257. In McConnell v. Rhay, 393 U.S. 2, 89 S.Ct. 32, 21 L.Ed. 2d 2 (1968), the Court was compelled by these considerations to treat the right to counsel at sentencing like the right to counsel at other critical stages of adjudication—the Court held *Mempa* to apply retroactively.

The proceeding at issue in this case, wherein the California Adult Authority redetermined petitioner's previous ten

---

3. Petitioner does not allege that he has raised the issue of right to counsel at sentence redetermination in state courts. The state, however, does not raise the exhaustion requirement as a defense to this issue. Furthermore, an examination of the circumstances of this case indicates that it is an appropriate case for relaxing the exhaustion requirement. Final disposition has already been long delayed. Since 1964 petitioner has sought federal relief but was frustrated therein because of the now-extinct doctrine of McNally v. Hill, 293 U.S. 131, 55 S.Ct. 24, 79 L.Ed. 238 (1934). In addition, the issue of counsel at sentence determina-

tions is purely one of law, therefore not requiring deference to the state fact-finding procedures. Finally, the uniform posture of state law is squarely against the relief sought herein, so that a remand to the state courts would create a belated and fruitless fragmentation in a long-pending proceeding. See In re Cleaver, 266 Cal.App.2d 143, 72 Cal.Rptr. 20 (1968) and authorities cited therein. For these reasons, this court does not feel compelled to exercise the principle of comity in which the exhaustion requirement is rooted. See United States ex rel. Gockley v. Myers, 411 F.2d 216 (3d Cir. 1969).

**1254**

year sentence at maximum, is in substance very similar to the deferred sentencing proceeding in *Mempa* and *McConnell*. Jerry Douglas Mempa was on probation from a "joyriding" conviction when the prosecuting attorney moved to have Mempa's probation revoked for participation in a burglary. Mempa was not represented by counsel at the revocation hearing, and at the conclusion of the hearing the judge revoked his probation, imposed a ten year sentence, and stated that he would recommend to the parole board that Mempa serve one year.

William Earl Walkling, petitioner in a companion case to *Mempa*, was on probation from a burglary conviction when proceedings were instituted to revoke his probation for numerous counts of forgery and grand larceny. After a proceeding at which Walkling was not represented by counsel, the court revoked his probation and imposed the maximum fifteen year sentence for the prior burglary conviction.

Similar situations were involved in *McConnell* and the companion case of Stiltner v. Rhay. McConnell had served four months in jail and was on probation from two counts of grand larceny when the prosecuting attorney moved that McConnell's probation be revoked for probation violations. After two hearings, at which McConnell was not represented by counsel, he was sentenced to two concurrent fifteen year terms.

Douglas Stiltner was on probation from convictions of burglary and grand larceny when two probation revocation proceedings were held. Stiltner was unrepresented by counsel and the proceedings concluded with the imposition of two concurrent fifteen year sentences.

The similarity which these cases display is the necessity of ascertaining and interpreting facts for the purpose of imposing additional punishment. It is in such a situation that the lawyer's art of marshaling facts and exercising his persuasive powers is so essential to the fair treatment of a criminal defendant and to the integrity of the judicial process. See Douglas v. California, 372 U.S. 353, 358, 83 S.Ct. 814, 9 L.Ed.2d 811 (1963). The California Supreme Court, by imposing the judicial requirement that sentence redeterminations be made only for "cause", [4] has implicitly acknowledged that the sentence redetermination, with its basis in the presentation and interpretation of facts, is a process in which a prisoner without the assistance of counsel is at a decided disadvantage.

In the instant case, with the assistance of counsel petitioner could have presented his case to the Adult Authority more effectively in the following ways. First, counsel could have minimized petitioner's culpability in the 1961 robbery by pointing to his on-the-spot enlistment to drive the co-defendant from the scene. This argument would have been consistent with petitioner's conviction for first degree burglary because in California aiders and abettors are prosecuted and convicted as principals. Second, counsel could have construed petitioner's association with his co-defendant in a favorable light. Third, counsel could have stressed that petitioner had received a consecutive sentence on the 1961 robbery, and therefore any redetermination of his 1953 sentence based on the 1961 conviction should be minimized in light of the imposition of consecutive sentences. Fourth, counsel could have argued against the policy of automatic maximum redetermination, asserting either that the policy constituted generally bad sentencing practice or that the policy should not be applied to petitioner's particular case.

4. In re Schoengarth, 66 Cal.2d 295, 57 Cal.Rptr. 600, 425 P.2d 200 (1967); People v. Dorado, 62 Cal.2d 338, 42 Cal. Rptr. 169, 398 P.2d 361 (1965); In re McLain, 55 Cal.2d 78, 9 Cal.Rptr. 824, 357 P.2d 1080 (1960); In re Smith, 33 Cal.2d 797, 205 P.2d 662 (1949). The United States Supreme Court recently concurred in the necessity of a factual basis for an increase in sentence, requiring that the reasons for the increased sentence "must affirmatively appear" and "must be based upon objective information concerning identifiable conduct." North Carolina v. Pearce, 395 U.S. 711, 89 S.Ct. 2072, 23 L.Ed.2d 656 (1969).

In the view of this court, the foregoing possibilities for influencing the redetermination of petitioner's 1953 sentence bring this case within the holding of *Mempa*, made retroactive in *McConnell*. It was not adequate for the Adult Authority to redetermine petitioner's sentence at maximum solely on the basis of the cancellation of parole. Counsel should have had an opportunity to persuade the Authority to redetermine petitioner's sentence in light of the nature of the offender, and not merely the nature of the crime. See North Carolina v. Pearce, 395 U.S. 711, 723, 89 S.Ct. 2072, 23 L.Ed.2d 656 (1969). The lack of appointed counsel was, in light of *McConnell*, a violation of the Sixth Amendment made applicable to the states by the Fourteenth Amendment. On habeas corpus, this court has the duty and the responsibility of correcting this constitutional violation.[5]

A word is in order concerning the conventional thinking that characterizes the Adult Authority's power over sentencing as "administrative" rather than "judicial", thus immunizing the Adult Authority from the reach of constitutional requirements set forth in such cases as *Mempa* involving court proceedings.[6] It is established that the constitutional guarantees that undergird the criminal process are effective over persons other than judges and in forums other than the courtroom. The right of confrontation and cross-examination was recently applied by the Supreme Court to the investigations of a state commission which, in substance, was empowered to make accusations of criminal conduct. Jenkins v. McKeithen, 395 U.S. 411, 89 S.Ct. 1843, 23 L.Ed.2d 404 (1969); see also Greene v. McElroy, 360 U.S. 474, 79 S.Ct. 1400, 3 L.Ed.2d 1377 (1959) (nonconstitutional grounds). The privilege against self-incrimination has been held properly exercised by teachers, lawyers and police in connection with nonjudicial noncriminal inquiries into their professional conduct or qualifications. Slochower v. Board of Higher Education, 350 U.S. 551, 76 S.Ct. 637, 100 L.Ed. 692 (1956); Willner v. Committee on Character and Fitness, 373 U.S. 96, 83 S.Ct. 1175, 10 L.Ed.2d 224 (1963); Garrity v. New Jersey, 385 U.S. 493, 87 S.Ct. 616, 17 L.Ed.2d 562 (1967).

The principle underlying these cases and made explicit in Jenkins v. McKeithen is that appropriate constitutional safeguards must be observed for "determinations * * * affecting legal rights" that are equivalent to adjudications made in a criminal prosecution. 395 U.S. 427–428, 89 S.Ct. 1843. In *Jenkins* the determination was equivalent to a finding of criminal guilt; in the

---

5. The state opposes petitioner's claim by citing Eason v. Dickson, 390 F.2d 585 (9th Cir. 1968), which relied on Sturm v. California Adult Authority, 395 F.2d 446 (9th Cir. 1967). The theory of these cases is that nothing constitutionally significant happens when a sentence is redetermined at the maximum because, under an indeterminate sentence, the prisoner has theoretically already been sentenced to a term that extends from the minimum to the maximum so that the additional term is not a "penalty."
This explanation partakes of the mystical. Certainly to the prisoner, an increase of a sentence to life feels like a penalty, and for society's penal purposes, he is deemed to be undergoing punishment. If substance is to have any influence on legal conclusions, then the extension of a previously fixed sentence to life must be deemed a penalty.

Two, more conventional, reasons compel this court not to follow *Eason* and *Sturm*. First, those decisions treat only in the most tangential fashion the issue of appointed counsel at sentence redetermination. Second, their operative facts occurred prior to *Mempa*, November 13, 1967, and they were decided prior to *McConnell*, which made Mempa retroactive.

6. *See, e. g.,* In re Sandel, 64 Cal.2d 412, 50 Cal.Rptr. 462, 412 P.2d 806; In re Smith, 33 Cal.2d 797, 205 P.2d 662 (1949); In re Cleaver, 266 Cal.App.2d 143, 72 Cal.Rptr. 20, 425 P.2d 200 (1968); People v. Ray, 181 Cal.App. 2d 64, 5 Cal.Rptr. 113 (1960); *see also* Sturm v. California Adult Authority, 395 F.2d 446, 448 (9th Cir. 1968).

instant case the determination was equivalent to the imposition of sentence based on a finding of criminal guilt.

The Supreme Court in In re Gault, 387 U.S. 1, 87 S.Ct. 1428, 18 L.Ed.2d 527 (1967), offers clear guidance for the application of this principle to the present case. The Court in *Gault* looked behind the labels that placed an informal, purportedly benevolent veneer upon unfairness to juveniles. The Court noted that under the prevailing parens patriae attitude, states classified juveniles as "delinquents" rather than "criminal," adopted wholly flexible procedures for adjudicating juvenile misconduct, and committed the youths to "receiving homes" or "industrial schools" rather than prisons. With a painstaking examination of each phase of the juvenile court process, the Supreme Court concluded that these attempted distinctions from the adult criminal process operated to the juvenile's detriment rather than to his benefit. Focusing on the right to counsel, the Court noted that juvenile proceedings could result in incarceration in a state institution for three years or more. Such a substantial penalty made the right to appointed counsel "essential." 387 U.S. at 36–37, 87 S.Ct. 1428. If the presence of advocates caused the juvenile proceeding to be less informal and more adversary, that difference would be a welcome protection against the abuses of informality. 387 U.S. at 38 n. 65, 87 S.Ct. 1428.

Thus did the Supreme Court look to the substance of juvenile court proceedings and their consequences and conclude that the right to appointed counsel was essential. Similarly, this court has looked to the substance of Adult Authority redeterminations at maximum of previously fixed sentences and has evaluated the prisoner's need for the "assistance of counsel to cope with problems of law, to make skilled inquiry into the facts, to insist upon regularity of the proceedings, and to ascertain whether he has a defense and to prepare and sub-

mit it." 387 U.S. at 36, 87 S.Ct. at 1448. This court has concluded, in light of Mempa v. Rhay, as retroactively applied to determinations of sentence, that a prisoner must be notified of the availability of appointed counsel for proceedings influential or directly dispositive of a sentence redetermination.

This court's decision should not be construed as a criticism of California's indeterminate sentence program. This court does not here question the potential which California's sentencing program has for increasing prisoner incentive and minimizing oppressive punishments struck in the heat of trial. This court seeks not to derogate from the state's penological program, but to add to it a constitutionally required improvement. No program whose purpose is to treat "the criminal rather than the crime"[7] can suffer from the assistance that counsel can provide for fairly and accurately determining the proper punishment.

### Conclusion

This court has found petitioner's 1961 conviction to be constitutionally valid. Petitioner is therefore subject to the sentence imposed on the basis of that conviction. The effective date of that sentence will depend upon such action as the Adult Authority may take.

It is ordered that the 1961 redetermination of petitioner's 1953 sentence is hereby set aside.

It is further ordered that should the Adult Authority wish to make a valid redetermination of petitioner's 1953 sentence it accord petitioner the right to counsel and make such redetermination within sixty days. Failing such redetermination within the time provided, this court will entertain a motion to determine the effective date of petitioner's 1961 sentence.

All other relief sought by petitioner is hereby denied.

The court expresses its appreciation to petitioner's counsel, who served by

---

7. People v. Kostal, 159 Cal.App.2d 444, 452, 323 P.2d 1020, 1025 (1958).

appointment of this court. His able and thorough representation fully vindicate the confidence which this court must, in order to promote equal access to the courts, place in the members of its bar.

## ORDER SETTING ASIDE REDETERMINATION OF SENTENCE.

Since the court's order of September 12, 1969, Ellhamer v. Wilson has been under reconsideration in light of Mead v. California Adult Authority, 415 F.2d 767 (9th Cir. 1969). The court in *Mead* dealt with the question of petitioner's right to an attorney at a parole revocation hearing in the following one sentence: "Appellant did not have a constitutionally protected right to counsel to represent him at the state parole revocation proceeding. (Williams v. Patterson, (10th Cir. 1968) 389 F.2d 374)."

The court gives no further indication of its reasoning or what facts it took into consideration. Its conclusion relies only on the *Williams* case. *Williams* is distinguishable from Ellhamer in that there was no "attack * * * on the sentence or on the procedures connected therewith." The *Williams* court stated also that they were "not concerned with sentencing." In *Ellhamer* the parole revocation hearing entailed the "refixing" of the prisoner's sentence from ten years to the maximum of life.

In a situation such as *Ellhamer* where there is a redetermination of a man's sentence at the parole revocation hearing, the parolee has a constitutional right to an attorney.[1]

Based on this court's opinion of September 12, 1969 in Ellhamer v. Wilson and the reasons stated above, it is ordered that the 1961 redetermination of petitioner's 1953 sentence is hereby set aside.

It is further ordered that should the Adult Authority wish to make a valid redetermination of petitioner's 1953 sentence, it accord petitioner the right to counsel and make such redetermination within sixty days. Failing such redetermination within the time provided, this court will entertain a motion to determine the effective date of petitioner's 1961 sentence.

All other relief sought by petitioner is hereby denied.

---

1. *Cf.*, Braun v. Rhay, 416 F.2d 1055, 1057–1058 (9th Cir. 1969); Hewett v. State of North Carolina, 415 F.2d 1316 (4th Cir. 1969); Commonwealth v. Tinson, 433 Pa. 328, 249 A.2d 549 (1969).