**Byron Milton WILBURN, Petitioner,**

v.

**Warden L. S. NELSON et al.,
Respondents.**

**No. C–70 1402.**

United States District Court,
N. D. California.

Nov. 25, 1970.

Evelle J. Younger, Atty. Gen. of Cal., Derald E. Granberg, Deputy Atty. Gen., San Francisco, Cal., for respondents.

Byron Milton Wilburn, in pro. per.

## ORDER SETTING ASIDE REDETERMINATION OF SENTENCE.

ZIRPOLI, District Judge.

Petitioner is currently serving a sentence of six months to 14 years in San Quentin State Prison for violation of Cal.Pen.Code § 476 [issuing fictitious checks], imposed originally on March 4, 1959. Since the beginning of his sentence, petitioner has appeared before the California Adult Authority, or had his sentence considered by the Adult Authority, some 21 separate times. It is the most recent consideration that petitioner seeks to set aside by means of habeas corpus.

On March 22, 1965, the Adult Authority refixed petitioner's sentence at ten years and released him on parole. Petitioner's sentence came before the Adult Authority several more times until, on September 20, 1968,[1] the Adult Authority revoked his parole and redetermined his sentence at the 14 year maximum. Petitioner alleges that the Adult Authority's failure to provide him with the assistance of counsel at this hearing was a denial of due process, relying on this court's decisions in Ellhamer v. Wilson, D.C., 312 F.Supp. 1245, 1970, and Hinnington v. Department of Corrections, No. C–69 149 AJZ, filed April 17, 1970. For the reasons stated in those opinions, and the reasons stated below, petitioner's September 20, 1968 sentence redetermination must be set aside.

*Ellhamer* and *Hinnington* were based on this court's conclusions as to the impact of Mempa v. Rhay, 389 U.S. 128, 88 S.Ct. 254, 19 L.Ed.2d 336 (1967), McConnell v. Rhay, 393 U.S. 2,

1. Petitioner alleges that his parole was revoked October 31, 1968. The State denies this, asserting that the true date was September 20, 1968, but admits that this factual dispute is not determinative, as the procedure petitioner challenges concededly took place at one of these dates. Thus, on this factual question, no evidentiary hearing is necessary.

89 S.Ct. 32, 21 L.Ed.2d 2 (1968), and Jenkins v. McKeithen, 395 U.S. 411, 89 S.Ct. 1843, 23 L.Ed.2d 404 (1969). As applied to the problem presented here, these cases stand for the proposition that any proceeding which, in essence, may subject a party to a finding of criminal guilt and thus enhance the possibility of incarceration, must be attendant with principles of due process, including representation by counsel.

In *Ellhamer*, as here, the State argued that in fact no additional sentence was being imposed, as, under the California Indeterminate Sentence Law, the maximum sentence had already been imposed and the redetermination, while compelling petitioner to return to jail, was not in the nature of the "new" sentence involved in *Mempa*. Indeed, the State argued that the return to jail and the redetermination of sentence was a mere administrative matter, akin to the transfer of a prisoner from one correctional facility to another or, for that matter, from one section of a facility to another section in that same facility. In effect, the State argued that under the California scheme a convicted prisoner is at all times subject to the jurisdiction of the Adult Authority, and regardless of his location, is still subject to their control, for he is merely in another phase of the correctional process.

Here, the State further argued that following *Ellhamer* to its logical conclusion would require appointed counsel each time a prisoner came before the Adult Authority, since they have the power to refix sentence every time a prisoner or his file appears before them. Both this and the former argument misinterpret the impact of *Ellhamer*.

In *Ellhamer*, as in *Mempa, McConnell, McKeithen* and here, it was not the potential for a greater (or lesser) period of incarceration alone that compelled this court's requiring the availability of counsel. If such were the case, the State would be correct in its conclusion that counsel must be present at every meeting of the Adult Authority. Without passing on the merits of such a contention, it is enough to say that *Ellhamer* is more limited than that. What the court believes *Mempa, McConnell* and *McKeithen* stand for, and thus what *Ellhamer* stands for, is that when a finding of fact is made which is akin to a finding of criminal or quasi-criminal guilt, counsel must be present. That is, when the basis for revocation of parole is a finding by the Adult Authority that a parolee has committed an act for which he could have been prosecuted (or indeed, as here, was prosecuted) or that his activities, while not in themselves criminal, were in the nature of criminal activities,[2] parolees must be afforded the right to retained or appointed counsel.

This is to be distinguished from, for example, the yearly review of all prisoners by the Adult Authority. Such reviews usually consider the prisoner's progress on the road to rehabilitation, and do not turn on the commission of additional criminal or quasi-criminal acts. For present purposes, this court is prepared to assume that such findings are purely administrative in character and do not warrant the presence of counsel, appointed or otherwise. Consistent with this, it appears that revocation of parole and redetermination of sentence by the Adult Authority for administrative reasons does not warrant counsel's presence.[3] Such reasons might

2. Activities in the nature of criminal acts (or quasi-criminal acts) would include, without meaning to be exhaustive, association with persons having criminal reputations, addiction to the unlawful use of narcotics, possession of a firearm by a convicted felon.

3. The Supreme Court's recognition that the due process and equal protection clause of the Constitution require the presence of counsel at every critical stage of the criminal process is based not on counsel's ability to reduce his client's ultimate incarceration, but on his ability to ensure that the process by which his client is judged meets the standards insisted upon by the Constitution. As stated in Douglas v. California, 372 U.S. 353, 358, 83 S.Ct. 814, 9 L.Ed.

include excessive unexcused failure to report to a parole officer, lack of cooperation with the parole officer or any other finding by the Adult Authority to the effect that the parolee is unable satisfactorily to cope with his parole.

Thus, for the present, the State's fears of overburdening the bar with appointments and the Adult Authority with attorneys is unfounded. Unless persuaded in the future to do otherwise, this court will continue to distinguish between findings of an in-custody or out-of-custody administrative nature and those of an in-custody or out-of-custody criminal or quasi-criminal nature. This is not, however, an invitation to the Adult Authority to couch all its decisions in administrative findings. Due process of law extends to the Adult Authority, and this court would expect it to act in good faith, as it has done in the past. However, in reviewing claims based on *Ellhamer* and the decision today, this court will not hesitate to go behind the record if the appropriate allegations are made.

■ Since petitioner's 1959 sentence was redetermined, at least in part, by reason of his conviction while on parole for use of a stolen credit card and his admitted addiction to heroin, and since such activities are criminal and quasi-criminal in nature, and since petitioner was not accorded the right to counsel at his 1968 redetermination,

2d 811 (1963), it is the lawyer's ability to marshal the facts and exercise persuasive powers that is essential to the fair treatment of a criminal defendant. Thus, when the facts upon which the Adult Authority rests its decision are in the nature of facts surrounding a criminal act, counsel's skills are as necessary to protect this process as they are to protect the process of a criminal trial. Contrast this with the type of administrative finding that a parolee has either violated a technical condition of parole or has otherwise made unsatisfactory progress toward rehabilitation. Here it is not extrinsic facts upon which the determination is based, but rather administrative conditions or rehabilitative

It is ordered that the 1968 redetermination of petitioner's 1959 sentence is hereby set aside.

It is further ordered that should the Adult Authority wish to make a valid redetermination of petitioner's 1959 sentence it accord petitioner the right to counsel and make such redetermination within 60 days. Failing such redetermination within the time provided, this court will entertain a motion to determine the sentence petitioner is now serving. Execution of this order is stayed 20 days to allow the Attorney General of the State of California to file, if he so desires, a notice of appeal. Should such notice of appeal be filed within the 20 days, this order will be further stayed until the further order of the court.

expertise. Such findings are very often based on experience and intuition, and not on specific behavior. Indeed, such findings reflect the very nature of the rehabilitative process. They are inexact, unable to withstand precise measurement or description, and largely intuitive. In such cases, while counsel may be helpful, the nature of the proceedings and ultimate findings do not require his presence. This position has been recently adopted by the Michigan Court of Appeals in Warren v. Michigan Parole Board, 23 Mich.App. 754, 179 N.W.2d 664 (1970). *See also* Judge Sobeloff's concurring opinion in Jones v. Rivers, 4 Cir., 338 F.2d 862, 875 (1964).