**Ernest MAYS, Jr., Petitioner,**

v.

**Louis S. NELSON et al., Respondents.**

**No. C–70 1029.**

United States District Court,
N. D. California.

Feb. 16, 1971.

588

San Francisco Neighborhood Legal Assistance Foundation, Vivian D. Wilson, San Francisco, Cal., for petitioner.

Evelle J. Younger, Atty. Gen. of Cal., James B. Cuneo, Deputy Atty. Gen., San Francisco, Cal., for respondents.

## ORDER SETTING ASIDE REDETERMINATION OF SENTENCE.

ZIRPOLI, District Judge.

This is another in a series of cases before this court challenging, as a violation of due process, the procedures employed by the California Adult Authority when parole is revoked. Consistent with this court's decisions in Ellhamer v. Wilson, 312 F.Supp. 1245 (N.D.Cal. 1969); Hinnington v. Department of Corrections, C–69 149 (N.D.Cal. April 17, 1970); and Wilburn v. Nelson, 323 F.Supp. 585 (N.D.Cal.1970), the redetermination of petitioner's sentence must be set aside.

This case lends further support to this court's earlier decisions, and vividly points out the necessity for some procedural safeguards in parole revocation and sentence redetermination hearings. After serving several years on various state convictions, petitioner's release date was set for May 5, 1969. While on parole thereafter, petitioner lived at the rest home owned by his mother and worked two jobs. Late in July he became involved in what all the participants later described as a family quarrel. He was arrested, charged with battery (Cal.Pen.Code § 242) and later convicted, after pleading guilty, of disturbing the peace (Cal.Pen.Code § 415). He served 15 days pursuant to this conviction. Rather than being released at the completion of this sentence, petitioner was held as a parole violator.

Around one month later, petitioner's parole was formally suspended without his appearance. After the passing of another month, petitioner appeared before the Adult Authority where he "pled" guilty to violating parole Condition 11, failure to obey all municipal, county, state and federal laws and ordinances. None of the standard procedural safeguards were afforded him, including a right to counsel.

What distinguishes this case from countless others and points up the need for some procedural safeguards is the fact that the Adult Authority had before it information to the effect that petitioner had originally been charged with assault with a deadly weapon (Cal.Pen. Code § 245). This was not the case, and indeed petitioner denied attacking anyone with a knife. He said that the only time he had a knife was when he disarmed his brother-in-law who had at-

tacked him with the knife. Whatever the actual facts of the incident were, it is clear that petitioner was never charged with assault with a deadly weapon.

Had petitioner been afforded basic procedural safeguards, including right to counsel, he could have advised the Adult Authority that he had not been charged with assault with a deadly weapon, could have argued that although a technical violation of his parole contract, the altercation was really in the nature of a family dispute and that different living arrangements had been made, so that petitioner would be living apart from those family members with whom he was having personality conflicts.

■ All of the above is not meant to suggest that had petitioner been afforded basic elements of due process, the Adult Authority would not have revoked petitioner's parole and reset his sentence at the maximum. Petitioner was convicted of disturbing the peace, and while such a conviction would not necessarily lead to a parole revocation, it would be sufficient to do so, as petitioner's parole contract established complete compliance with all laws as a condition of parole. However, one cannot conclude that given these protections, the outcome would not have been different.

■ Respondent argues that in this case such procedural requirements are completely unnecessary, as all the facts had been presumably "tried" in a court of law attendant with *all* elements of due process. To compel the Adult Authority to hold another factual hearing, he argues, would be a needless retrial of the same facts.

This line of reasoning, while superficially sound, fails to recognize a significant factor. At his state trial for disturbing the peace, the kinds of "proof" he later wanted to present could have had no effect on the outcome of the trial. The mitigating fact that the incident was a family quarrel and that new living arrangements had been made could have no effect on the ultimate finding of guilt or innocence. Also, the misinformation regarding the supposed charge of assault with a deadly weapon played no part in his criminal trial. Thus, even assuming petitioner had had a full trial on the facts in state court, rather than conviction after a simple guilty plea, the facts relevant to a determination of his parole status would not have come to light.

Were respondent's view to prevail, those cases holding that defendants have a right to counsel at time of sentence would somehow have to be distinguished. At time of sentencing, counsel's role is not to retry the facts of the case, but to paint those facts proven in a light most favorable to the defendant. In Townsend v. Burke, 334 U.S. 736, 68 S.Ct. 1252, 92 L.Ed. 1690 (1948), the Supreme Court held that the absence of counsel during sentencing after a plea of guilty coupled with "assumptions concerning his criminal record which were materially untrue" deprived the defendant of due process. The Court concluded:

> "In this case, counsel might not have changed the sentence, but he *could have taken steps to see that the conviction and sentence were not predicated on misinformation or misreading of court records,* a requirement of fair play which absence of counsel withheld from this prisoner." Townsend v. Burke, *supra* at 741, 68 S.Ct. at 1255 (emphasis added).

In Mempa v. Rhay, 389 U.S. 128, 88 S. Ct. 254, 19 L.Ed.2d 336 (1967), the Court, in holding that counsel's presence was required at time of sentencing, recognized the importance of counsel apart from his ability to assure a fair trial of the facts. The Court said:

> "[T]he necessity for the aid of counsel in *marshaling the facts, introducing evidence of mitigating circumstances* and in general aiding and assisting the defendant to present his case as to sentence is apparent. Mempa v. Rhay, *supra* at 135, 88 S.Ct. at 257 (emphasis added).

Thus in this court's view, the very reasons which prompted the Supreme Court to require the presence of counsel at sentencing apply to this case and prompt this court to require the presence of counsel here.

Turning to the state's continuing argument that due process need not be applied at parole revocation hearings, as the petitioner has no "right" to remain on parole and thus has no true interest in the legal sense in the decision of the Adult Authority, the court can only observe that the relevant 9th Circuit cases so holding were decided well before the Supreme Court's decisions in Goldberg v. Kelly, 397 U.S. 254, 90 S.Ct. 1011, 25 L.Ed.2d 287 (1970), and the more recent case of Wisconsin v. Constantineau, 400 U.S. 433, 91 S.Ct. 507, 27 L.Ed.2d 515 (1971). In this court's view, petitioner's interest in remaining out of prison can in no way be characterized as less important than the right to continued welfare payments (*Goldberg*) or the right to keep one's name off a posted list of "excessive drinkers" (*Constantineau*), and principles of due process must apply equally to all.

Petitioner urges that this court should require other elements of due process, as well as the right to counsel, at parole revocation hearings. Quite likely he is correct; but in view of the fact that decisions requiring counsel at those hearings are currently before the Court of Appeals for the Ninth Circuit, it seems inappropriate at this time to extend the scope of protection beyond that outlined in *Ellhamer, Hinnington* and *Wilburn* while there remains the possibility that the Court of Appeals may conclude that even this safeguard is not constitutionally required.

Therefore, it is ordered that the 1969 redetermination of petitioner's sentence is set aside.

It is further ordered that should the Adult Authority wish to make a valid redetermination of petitioner's sentence, it accord petitioner the right to counsel, consistent with this opinion, and make such a redetermination within 60 days. Failing such redetermination, this court will entertain a motion to determine the sentence petitioner is now serving. Execution of this order is stayed 20 days to allow the Attorney General of the State of California to file, if he so desires, a notice of appeal. Should such notice of appeal be filed within 20 days, this order will be further stayed until further order of this court.